HOLMES *v.* BANKERS LIFE CO.

1. Insurance—Settlement of Double Indemnity Claim—Fraud—Duress.

On appeal from judgment for defendant *non obstante veredicto* in action of assumpsit on life insurance policy's double indemnity clause for death by external, violent and accidental causes, beneficiary's claim that she had been induced to accept single indemnity through fraud or duress *held,* unsupported.

2. Same—Double Indemnity—Suicide.

On appeal from judgment for defendant *non obstante veredicto* in action by beneficiary on double indemnity clause of life insurance policy, defendant's claim that death was by suicide *held,* not unsupported by evidence.

3. Same—Unliquidated Claim—Compromise and Settlement—Consideration.

Claim of double indemnity for accidental death under life insurance policy is unliquidated, and payment of conceded single indemnity furnishes consideration for the whole.

Potter, C. J., and Nelson Sharpe and Bushnell, JJ., dissenting.

Appeal from Wayne; Chenot (James E.), J. Submitted January 23, 1935. (Docket No. 49, Calendar No. 38,111.) Decided May 17, 1935. Rehearing denied June 19, 1935.

Assumpsit by Rose L. Holmes against Bankers Life Company, Des Moines, Iowa, a foreign corporation, for sums due on a life insurance policy. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Plaintiff appeals. Affirmed.

*Clarence T. Wilson (Pliny W. Marsh,* of counsel), for plaintiff.

*Douglas, Barbour, Desenberg & Purdy* (*Harold B. Desenberg,* of counsel), for defendant.

WIEST, J.   I cannot concur in the opinion of Mr. Justice POTTER.

I find no fraud or duress.   Defendant, in good faith, claimed that the death of the insured was not accidental but by suicide, and that claim was not unsupported by evidence.

At the time of the settlement plaintiff claimed and insisted upon payment of double indemnity but, after conferring with a former agent of defendant, who advised her to take the proffered check and sue for the balance, she accepted the check and signed a release with full knowledge that it was in satisfaction of indemnity under the policy.   She testified:

"Well, I knew that I signed a release but I signed with in my mind to sue for the balance that was coming to me."

Plaintiff could not execute the settlement receipt with her tongue in her cheek or the mental reservation to not be bound by it, and this suit is exactly what she intended to bring at the time she signed the settlement receipt.   I am not in favor of that kind of dealing.

Payment to plaintiff of the amount conceded by defendant furnished consideration for settlement of the whole.

As said in *Long* v. *Ætna Life Ins. Co.,* 259 Mich. 206, 209:

"Plaintiff had only one claim under the policy, the amount of which depended upon the circumstances of the injury.   The fact that part of the claim was conceded did not divide the liability into two liquidated claims.   Whatever the rule in other

jurisdictions, this court holds that such a claim is unliquidated and payment of the conceded amount furnishes consideration for settlement of the whole. *Tanner* v. *Merrill*, 108 Mich. 58 (31 L. R. A. 171, 62 Am. St. Rep. 687); *Kern Brewing Co.* v. *Royal Ins. Co.*, 127 Mich. 39.''

The settlement receipt was fully understood by plaintiff and bars this suit.

The judgment is affirmed, with costs to defendant.

NORTH, FEAD, BUTZEL, and EDWARD M. SHARPE, JJ., concurred with WIEST, J.

POTTER, C. J. (*dissenting*). Plaintiff's husband, now deceased, was insured for $5,000 in defendant company. The policy provided for the payment of double indemnity in case of death through external, violent and accidental causes. After the death of plaintiff's decedent, she was paid $5,012.30, the amount of single indemnity plus interest thereon, and a release signed by her upon receiving a check for $4,808.80 and payment of the doctor bill and hospital bill for $203.50. Plaintiff sued to recover the double indemnity said to be due on the policy, claiming decedent's accidental death entitled her to such double indemnity, and the release signed by her was obtained by fraud. The case was tried by a jury which, after considering the testimony under a charge from the trial court with which no fault was found, rendered a verdict for plaintiff for the full amount of the double indemnity plus the interest from the date of the death of the deceased, and judgment was entered upon this verdict. Subsequently, this judgment was set aside and judgment

of no cause of action entered by the trial court. Plaintiff appeals.

If there is testimony to support two claims, of plaintiff, the verdict of the jury on the disputed questions of fact should stand. There is no proof not controverted or fully explained which indicates plaintiff's decedent committed suicide. It is not only a reasonable inference for the jury to draw, but one which on the record they undoubtedly should have drawn, that plaintiff's decedent was asphyxiated by carbon monoxide gas from the exhaust of his automobile in his garage while he was tinkering with the automobile. The important question was whether there was such evidence of fraud or overreaching on the part of the defendant in procuring the signature of plaintiff to the release as to warrant the jury in finding a verdict for the plaintiff that such release was obtained by fraud. The release signed by the plaintiff purports to be one made in compromise of the plaintiff's claim, the basis of the compromise as stated therein being the claim upon the part of defendant the death of decedent was not accidental but the result of suicide.

After the death of her husband, plaintiff removed his body to Canada for burial, after which she returned to Detroit and was confined to bed for some time and until two days before the alleged settlement. Dr. MacGregor had been employed at the time of her husband's death and was employed by plaintiff after she returned from Canada when she was taken sick, but, not getting better, she employed another physician. Dr. MacGregor had not been paid. The hospital bill contracted at the time of the death of plaintiff's husband had not been paid. Dr. MacGregor claims he was informed plaintiff was packing up her household goods and he wanted his

money, and he wanted the hospital to get its money. He had told the hospital he would guarantee the bill and he says he felt he was taking a chance. He testified:

"There wasn't any reason especially to hurry to make this settlement except in a way we were just— we were solicitous, both the hospital and I, to be frank about it, because she had taken the body to Canada, and we did not know, after she got the money, whether we would be left holding the bag or not."

The doctor in this particular transaction, instead of standing in a fiduciary relation of physician and patient as plaintiff thought, actually stood in the relation of debtor and creditor, and the creditor was seeking to collect and thus relieve himself from personal liability. The doctor got in touch with the claim agent of defendant, called up plaintiff by telephone and made an appointment with her whereby she was to come to his office. He did not advise her for what purpose she was to come there. When plaintiff reached the doctor's office, she was introduced to the claim agent of defendant. He represented he was in a hurry; he wanted to get the settlement disposed of; he was the only claim agent of the defendant company; he had to go to Grand Rapids immediately; if she did not settle with him then, it would be a long time before she saw him again. He was all ready for the settlement. He had the check there, and he had the receipt and release which she was to sign there. This receipt and release was for $5,012.30. The doctor just suddenly remembered he had a doctor's bill. The claim agent drew a check to the doctor for $203.50 which was the exact amount of the doctor bill and the hospital bill which the doctor had guaranteed, and handed

to plaintiff a check for $4,808.80 before the receipt and release was signed, and the amount of these two checks exactly equaled the amount of single indemnity plus the interest.

Plaintiff insisted she was entitled to double indemnity under the policy. She was told by the claim agent the amount of the check tendered to her was all the company had given him and she had better accept the check. She insisted upon payment of the double indemnity. Finally, she called up someone who happened to be a person who had been an agent for defendant company and he advised her to take the check and sue for the balance. Certainly, the doctor who testifies to the accidental cause of death and who was there present trying to get his money did not advise plaintiff she had a right to recover the full amount. He was too anxious to get his doctor's bill so he would not be left "holding the bag."

Plaintiff had been educated in a convent where she learned the French language, but she had never attended an English school. The only English which she knew she had picked up from her husband and by her own efforts. She did not read the release and receipt signed by her, and she testifies, and it is not seriously disputed, it was not read over or explained to her. After she was prevailed upon to accept the check and sign the release, the doctor and the claim agent immediately loaded her into the claim agent's automobile, went to the hospital where the doctor paid the hospital bill, and then to her home where she obtained the policy from where it was kept and delivered it to the claim agent.

Plaintiff in her declaration says she was nervous, high-strung and worn out, and had just gotten up from her bed at the time she went to the doctor's office and met the claim agent for defendant company; and this is corroborated by the proof. She

contends it was not explained to her she was releasing her claim under the double indemnity provision of the policy, and there is no serious contention this was explained to her. She was being urged to settle, and when she talked with somebody it happened to be a former agent of the insurance company. She says the provision in the release above referred to setting forth the claim of the insurance company that deceased had come to his death by suicide was purposely concealed from her, was not read to her, and although she may have had an opportunity to read it, the circumstances were such that negotiations were being carried on at the time and she did not as a matter of fact read it; that by reason of the conduct of the doctor and the claim agent of the company, she was prevented from understanding the full significance of the arrangement, it being represented to her the receipt she was signing was only a receipt for the check; and taking into consideration her want of knowledge of the English language, the relationship which she had with Dr. MacGregor, his anxiety to get his money so as not to be left "holding the bag," her physical condition, and all the facts and circumstances, amounted to a fraud upon her rights and that the verdict of the jury should be sustained. There was sufficient evidence to carry the question of overreaching and fraud to the jury.

It is not necessary any witness be produced to testify directly to the fraudulent conduct of defendant's agent. Fraud is an inference from established facts. It is sufficient to show defendant's agent was instrumental in fraudulently overreaching plaintiff. Whenever there is a great weakness of mind in a person executing a contract, either arising from age, sickness or any other cause, though not amounting to absolute disqualification, and the considera-

tion therefor is grossly inadequate, such contract may be set aside. *Allore* v. *Jewell,* 94 U. S. 506. Such contracts are properly regarded with grave suspicion by courts of justice, and should be closely scrutinized and only allowed to stand when established by the strongest evidence. *Shakespeare* v. *Markham,* 72 N. Y. 400; *Noban* v. *Shoup,* 171 Mich. 191.

"The general theory of the law in regard to acts done and contracts made by the parties being that in order to bind them, there must be a free and full consent, and consent being an act of reason accompanied with deliberation, transactions in which one of the parties is not as free and voluntary an agent as the other, or does not apprehend the meaning and effect of what he is doing, want the very qualities which are essential to the validity of all transactions. It is upon this principle that when a person, who from his state of mind, age, weakness, or other peculiar circumstances is incapable of exercising a free discretion, is induced by another to do any act which may tend to his injury, that other shall not be allowed to derive any benefit from his improper conduct. The equitable principle is of universal application that where a person is not equal to protecting himself in the particular case the court will protect him." *Connelly* v. *Fisher,* 3 Tenn. Ch. 382.

The burden was upon the defendant to show, not only that plaintiff fully understood the terms, import and effect of the instrument executed, but, if her intent was expressed by the contract of settlement, to show that such intent was not produced by undue influence or fraud. *Smith* v. *Cuddy,* 96 Mich. 562.

"As has been frequently said in our own cases, the duty of courts is to refuse judicial sanction to such an instrument until fully satisfied of the fair-

ness of the transaction, and that the instrument is the intelligent act of the person executing it. *Seely* v. *Price,* 14 Mich. 541; *Witbeck* v. *Witbeck,* 25 Mich. 439; *Wartemberg* v. *Spiegel,* 31 Mich. 400; *Barnes* v. *Brown,* 32 Mich. 146; *Duncombe* v. *Richards,* 46 Mich. 166; *Jacox* v. *Jacox,* 40 Mich. 473 (29 Am. Rep. 547); *Finegan* v. *Theisen,* 92 Mich. 173." *Smith* v. *Cuddy, supra.*

Plaintiff's physician employed by her to treat her husband prior to his decease cooperated with defendant's agent in procuring this settlement. Where an antecedent fiduciary relation exists, the court will presume confidence placed and influence exerted. 2 Pomeroy's Equity Jurisprudence (4th Ed.), § 951.

Assumpsit is an action of an equitable character, liberal in form, and greatly favored by the courts as a remedy. 5 C. J. p. 1381.

"Whenever a benefit accrues to a party, whether for services rendered, money expended, or property used, *or from any other cause,* upon which a duty to make compensation to another arises, the law will, in the absence of an express promise to make such compensation, imply one from the transaction and the duty." *Ward* v. *Warner,* 8 Mich. 508.

Defendant received a release of liability to pay to plaintiff $5,000 by fraudulently overreaching plaintiff, and an action of assumpsit is a proper remedy to enforce such liability notwithstanding it was fraudulently procured to be released.

Judgment should be reversed and the judgment based upon the verdict of the jury reinstated, with costs to plaintiff.

NELSON SHARPE and BUSHNELL, JJ., concurred with POTTER, C. J.