LEHANEY v. NEW YORK LIFE INS. CO.

1. APPEAL AND ERROR—JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.

Plaintiff's version of facts of case against insurer under life insurance policies containing provisions for double indemnity in case of accidental death is accepted where appeal is from judgment for defendant notwithstanding a verdict was rendered for plaintiff.

2. ACCORD AND SATISFACTION—UNLIQUIDATED CLAIM—ACCEPTANCE OF CONDITIONAL TENDER—PROTEST.

If tender is made in full satisfaction of an unliquidated claim the amount of which is in good faith disputed by the debtor and the creditor is fully informed of the condition accompanying acceptance, an accord and satisfaction is accomplished if the money tendered is retained for there can be no severance of the condition from acceptance and creditor's protest and notice to debtor that amount tendered is credited on claim and not accepted in full satisfaction avails creditor nothing.

3. COMPROMISE AND SETTLEMENT—UNLIQUIDATED CLAIM—PAYMENT.

The private adjustment of disputes concerning unliquidated claims is favored, hence the law does not permit a claimant to retain money tendered by way of settlement and subsequently litigate with the debtor for the recovery of a greater sum.

4. INSURANCE—ACCIDENT—DOUBLE INDEMNITY—PAYMENT OF SINGLE INDEMNITY—CONSIDERATION.

The payment of single indemnity by insurer under life insurance policies containing provision for payment of double indemnity in case of accidental death was consideration for the extinguishment of a beneficiary's claim for double indemnity.

5. PRINCIPAL AND AGENT—APPARENT AUTHORITY.

The apparent authority of an agent is determined by the acts of the principal and not by the acts of the agent.

Acceptance of a conditional tender and retention of benefits as accord and satisfaction, see 2 Restatement, Contracts, § 420.

Restriction of apparent authority of an agent, see 1 Restatement, Agency, § 136.

6. SAME—APPARENT AUTHORITY—INSURANCE AGENT—PERSONAL DELIVERY OF PAYMENT.

The mere fact that insurer which had denied claim for double liability for alleged accidental death of insured and made out drafts for face amount of policies with detailed statement of what was being paid, which drafts clearly showed they were for payment in full of all claims under the respective policies, caused its agent to deliver the documents in person would not clothe such agent with greater authority than the documents themselves would appear to give him.

7. SAME—APPARENT AUTHORITY—EVIDENCE.

Persons dealing with an agent may rely on his apparent authority and such authority is to be gathered from all the facts and circumstances properly admitted in evidence.

8. SAME—APPARENT AUTHORITY—ESTOPPEL.

Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it.

Appeal from Wayne; Miller (Guy A.), J. Submitted October 5, 1943. (Docket No. 2, Calendar No. 42,296.) Decided November 29, 1943.

Assumpsit by Mabel L. Lehaney against New York Life Insurance Company on two life insurance policies. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Vandeveer & Haggerty (Fred L. Vandeveer,* of counsel), for defendant.

*Armstrong, Weadock, Essery & Helm (Richard G. Eubank,* of counsel), for defendant.

BUSHNELL, J. Plaintiff, Mabel L. Lehaney, is the widow of Robert B. Lehaney, who died on Septem-

ber 27, 1938. Defendant, New York Life Insurance Company, on March 3, 1937, delivered to Robert B. Lehaney a reissued policy of life insurance in the amount of $10,000, and another reissued policy in the amount of $5,000. The original dates of the two policies in question were 1927. Each policy contained a double indemnity provision which provided that "upon receipt of due proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within 90 days after such injury," the insurance company would pay double the face of the policy to the beneficiary named therein.

Lehaney became ill from migraine headaches in 1930, and received monthly disability payments under these insurance policies until his death. During this period, Fred F. Pittack, a soliciting agent of the defendant company, called on him at various intervals and delivered some of the disability payment checks.

On September 20, 1938, at about 7:30 to 8 p.m., Lehaney told a woman employed at the Arena Kitchen that he was going into the Arena Gardens to see a prize fight. After the fight was over this witness saw Lehaney about 11 p.m. as he walked through the dining room on his way to the washroom. About five minutes later she saw Lehaney being helped into a taxicab. He told this witness that he had slipped in the washroom and thought he had broken his arm. Upon Lehaney's admission to the Ford Hospital at 11:30 p.m. it was discovered that he had a fracture of the humerus. The attending physician testified that other than the fracture he found nothing unusual. Subsequently a blood clot formed, resulting in thrombosis, and Lehaney died from a pulmonary embolism seven days after the accident.

Plaintiff filed written proofs of death wherein she claimed that, under the terms of the policies, she was entitled to double indemnity. Under date of November 17th, defendant insurance company wrote Mrs. Lehaney and acknowledged receipt of proofs of death and her claims for double indemnity. The letter stated that consideration had been given to the circumstances surrounding the death, "which appears to have resulted at least in part from disease." The company stated that its only liability under the circumstances was "for single indemnity in full settlement of all claims," and stated that checks were inclosed. This letter also refers to another policy which Lehaney had and about which there was no question, because it was written without double indemnity. Pittack testified that he delivered this letter to Mrs. Lehaney with three settlement checks, one of which is not involved in this matter. The other two checks bore on their face in red ink the language, "in full settlement of all claims under policy No.   *   *   *."

According to Mrs. Lehaney, she did not remember receiving the letter which Pittack claimed he delivered, but she did notice "the small red print" and did not know whether to accept the checks or not. She said she told Pittack that she was not going to indorse the checks or cash them if her action would in any way constitute a waiver of her claims for double indemnity. She testified that Pittack assured her that indorsing and cashing the checks would not operate in any way as a waiver and, therefore, she did so. Pittack, on the other hand, testified that he was instructed to deliver the letter denying liability for double indemnity with the checks to Mrs. Lehaney, that he gave her the letter and the checks and had some discussion with her about the double indemnity claims and the company's position

in the matter, and explained to her why defendant was not liable. He denied telling Mrs. Lehaney that the indorsement and cashing of the checks would not constitute a waiver of her claims. After leaving the papers with Mrs. Lehaney, he obtained the life insurance policies from her and returned them to the company's office in accordance with his instructions. The checks were paid by the company and plaintiff brought suit for the unpaid balance claimed under the policies. Because judgment *non obstante veredicto* was entered, we accept plaintiff's version of the facts.

The trial judge, after reserving decision on defendant's motion for directed verdict, submitted the matter to the jury, which rendered a verdict for plaintiff in the sum of $17,404.01. The trial judge subsequently held as a matter of law that there was no evidence in the record that Pittack was authorized by defendant to say that Mrs. Lehaney's acceptance and cashing of the checks would not foreclose her claims for double indemnity, and entered a judgment for defendant notwithstanding the verdict.

Plaintiff appeals and urges that the court erred in entering the judgment *non obstante veredicto,* denies as a matter of law that there was an accord and satisfaction, and insists there was an issue of fact raised as to whether defendant's agent in his entire dealings with her was acting within the apparent scope of his authority. Appellant also insists that the acceptance of the checks in the amount of the face value of the policies, less certain deductions which are not disputed, was not sufficient consideration for the extinguishment of her claim for double indemnity. Appellee contends that decision turns on accord and satisfaction, lack of evidence "that Pittack had apparent authority to

exceed his actual authority and vary the written terms of his principal's conditional tender," and that parol evidence is not admissible to vary the terms of a written instrument in the absence of fraud, duress or mistake. We deem it necessary to discuss only the questions of accord and satisfaction and the apparent authority of Pittack.

On cross-examination, plaintiff stated that she knew that the defendant company had refused to pay double indemnity. In the face of this knowledge and the unambiguous language of the checks she indorsed and cashed them.

In *Puffer* v. *State Mutual Rodded Fire Insurance Company of Michigan,* 259 Mich. 698, the court said:

"The failure of the parties to make a verbal agreement of settlement, separate from the indorsement on the check, is not of consequence. The rule as stated by Mr. Justice Wiest in *Shaw* v. *United Motors Products Co.,* 239 Mich. 194, 196, is:

" 'The applicable rule of law is, if the tender is in full satisfaction of an unliquidated claim, the amount of which is in good faith disputed by the debtor, and the creditor is fully informed of the condition accompanying acceptance, an accord and satisfaction is accomplished if the money so tendered is retained; for there can be no severance of the condition from acceptance and it avails the creditor nothing to protest and notify the debtor that the amount tendered is credited on the claim and not accepted in full satisfaction.'

"See, also, *Stone* v. *Steil,* 230 Mich. 249; *Eisenberg* v. *C. F. Battenfeld Oil Co.,* 251 Mich. 654."

As pointed out in the *Shaw Case* the governing rule "is based upon the condition accompanying the tender and consequent acceptance of the condition in retaining the money. This required no previous

agreement, but rests upon a dispute as to the amount due."

6 Williston on Contracts (Rev. Ed.), § 1854, p. 5214, states that the great and increasing weight of authority in the United States "as a matter of law regards the use or retention of the check by the creditor, with knowledge of the condition, as assent to it."

2 Restatement, Contracts, § 420, reads:

"Acceptance by a creditor of any performance tendered by the debtor as satisfaction of a pre-existing contractual duty, or of a duty to make compensation, is not prevented from operating as satisfaction by the creditor's manifested refusal so to regard it."

The record shows that a bona fide dispute existed with regard to the insurance company's liability. Adjustment of such controversies should be looked upon with favor and the law does not permit the claimant to accept and retain the money which has been tendered by way of settlement and subsequently litigate with the debtor for the recovery of a greater sum.

Payment of single indemnity was consideration for the extinguishment of plaintiff's claims for double indemnity.

As said in *Long* v. *Aetna Life Insurance Company of Hartford, Conn.*, 259 Mich. 206:

"Plaintiff had only one claim under the policy, the amount of which depended upon the circumstances of the injury. The fact that part of the claim was conceded did not divide the liability into two liquidated claims. Whatever the rule in other jurisdictions, this court holds that such a claim is unliquidated and payment of the conceded amount furnishes consideration for settlement of the whole. *Tanner* v. *Merrill*, 108 Mich. 58 (31 L. R. A. 171, 62

Am. St. Rep. 687); *Kern Brewing Co.* v. *Royal Ins. Co.,* 127 Mich. 39.''

See, also, *Puffer* v. *State Mutual Rodded Fire Insurance Company of Michigan, supra,* and *Holmes* v. *Bankers Life Co.,* 271 Mich. 460.

The apparent authority of Pittack, defendant's agent, is determined by the acts of his principal and not by the acts of Pittack.

The trial judge correctly stated the rule as follows:

"Apparent authority must rest upon something done by the alleged principal. The company, in this case, has done several things. First, it denied the claim of double liability in writing in Exhibit 17. This was delivered to her. Second, it made out detailed statements of exactly what was being paid for by the two drafts. These were delivered to Mrs. Lehaney. Third, it made out the drafts and caused them to show upon their face that they were in full settlement of all claims under these two policies. These drafts were, of course, delivered to Mrs. Lehaney and she saw the wording upon them because she called Pittack's attention to it.

"Everything that the company did in the way of creating written evidence of its determination and of Mr. Pittack's authority was done openly, and there is no claim of any double dealing or misrepresentation on its part insofar as those matters are concerned.

"The only claim of an apparent holding out, carrying with it an appearance of authority on his part to make the statement relied upon by the plaintiff in this case, must be deduced from the mere fact that the company entrusted these documents to him for delivery in person. I cannot see how such personal delivery under the circumstances of this case can possibly be construed so as to give rise to a conclusion of apparent holding out of the agent

as having greater authority than the documents he was the agent to deliver show upon their face he actually did have.''

In *Lynch* v. *R. D. Baker Construction Co.*, 297 Mich. 1, 6, the court quoted from *Faber* v. *Eastman, Dillon & Co.*, 271 Mich. 142, as follows:

'' 'It is elementary that persons dealing with an agent may rely on his apparent authority (*Marx* v. *King,* 162 Mich. 258), and that such authority is to be gathered from all of the facts and circumstances properly admitted in evidence. *Haines* v. *Leonard Warehouses, Inc.,* 199 Mich. 580; *Kerns* v. *Lewis,* 249 Mich. 27. This question was discussed at length by Mr. Justice McDONALD, speaking for the court in *Maryland Casualty Co.* v. *Moon,* 231 Mich. 56, and the following from 21 R. C. L. p. 856, was quoted with approval (p. 62):

'' 'Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it.' ''

But the record does not contain any testimony that shows that the defendant company's actions misled the plaintiff in any way or led her to believe that Pittack was authorized to make the claimed statements, and appellant was not justified in relying upon Pittack's claimed statements in view of the unambiguous language of the checks.

The judgment in favor of defendant is affirmed, with costs to appellee.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred.