## URBEN *v.* PUBLIC BANK.

1. ACCORD AND SATISFACTION—QUESTION FOR JURY—EVIDENCE.

Testimony of plaintiff as to oral agreement by defendant president of bank and defendant bank that president had agreed to pay plaintiff an agreed sum monthly in connection with pre-organization activities and as an employee and as to nonexistence of indorsement typed on final check to release bank *held*, to have created a conflict with the testimony of defendants which made the determination of the accord and satisfaction a disputed question of fact to be determined by the jury.

2. SAME—QUESTION FOR JURY—DISPUTED TESTIMONY.

A jury question is presented where there is disputed testimony as to whether an accord and satisfaction is accomplished as to claims allowed by a creditor.

3. SAME—TENDER OF PAYMENT IN FULL.

To work an accord and satisfaction the tender of payment as being in full should be made in unequivocal terms, so that the creditor in accepting the conditional payment will surely do so understandingly.

4. PAYMENT—PARTIAL PAYMENT TENDERED IN FULL.

Retention and use of an unindorsed check, accompanied by statement it is in full of a certain account, does not preclude action for a balance in fact due.

5. WITNESSES—PRESUMPTION AS TO FAILURE TO CALL A WITNESS—INSTRUCTIONS—EVIDENCE.

Error in instructing jury that it could assume that the testimony of a witness would be unfavorable to the side which should have

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 1 Am Jur, Accord and Satisfaction § 78.
[3, 4] 1 Am Jur, Accord and Satisfaction §§ 21–29.
Acceptance of remittance by check purporting to be "in full" or accompanied by indications of debtor's intention that it be so regarded. 34 ALR 1035, 75 ALR 905.
[5] 53 Am Jur, Trial § 695; 20 Am Jur, Evidence §§ 187, 189.

called him but had failed to do so should the jury, in its sole discretion, see fit to make such assumption together with comment that the witness who was not called had been a vice-president and agent of the defendant at the time of the occurrences involved but today was in no way connected with defendant but was now a State officer *held,* not reversible, where the witness was equally available to each side and the mere fact that both parties had failed to call him raised no presumption that, if called, he would testify against defendants' theory, and defendants failed to introduce testimony to refute plaintiff's testimony as to his conversation had with such witness concerning balance of salary sought to be recovered, since jury could have reached same verdict without assistance of erroneous charge as to presumption from party's failure to call a witness.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted October 6, 1961. (Docket No. 30, Calendar No. 49,071.) Decided December 28, 1961. Rehearing denied March 15, 1962.

Assumpsit by Paul F. Urben against Public Bank, a Michigan banking corporation, and Joseph F. Verhelle for balance of salary for services prior to and following organization of bank. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Davidow & Davidow,* for plaintiff.

*Piggins, Balmer, Grigsby, Skillman & Erickson,* for defendants.

KAVANAGH, J. Plaintiff sued the Public Bank, a Michigan banking corporation, and Joseph F. Verhelle, individually. He relies on a verbal agreement between himself and defendant bank's officers.

Plaintiff's declaration contained 2 counts. The first count, in assumpsit, was based on an oral agreement; the second count was on the common counts. Defendants filed an answer claiming the acceptance of the final pay check by plaintiff was in full

release and satisfaction of all salary owed the plaintiff. Defendants also claimed the check was indorsed "Salary and overtime pay through August 14, 1958, plus 2 weeks' severance pay in lieu of notice."

Defendants also gave notice they would rely on CL 1948, § 451.121 (Stat Ann § 19.761), which prohibits the selling, or soliciting the sale, of bank stock by certain individuals.

The case was tried to a jury and verdicts and judgments were rendered against the Public Bank for $2,059.23 and against Joseph F. Verhelle individually for $1,556.61 covering the period from plaintiff's first day of employment until the bank was organized.

Motion for new trial was made, which was denied. Defendants are here on appeal, claiming that plaintiff's acceptance of his final pay check constituted an accord and satisfaction. They further claim the court committed prejudicial error in allowing the jury to presume that the testimony of Mr. Zelinski would have been unfavorable to the defendants.

In May, 1957, defendant Verhelle was in the process of organizing the Public Bank. On May 28, 1957, plaintiff went to work for Verhelle and continued to work for defendants until on or about August 14, 1958, when he was dismissed. Plaintiff testified he assisted in the pre-organization, contacting acquaintances and friends in Detroit who might be interested in subscribing to stock in the new bank. In addition to this he worked on correcting a mailing list of some 40,000 names and on bringing the list up to date.

Plaintiff further testified that Verhelle represented to him that plaintiff would receive a salary commensurate with salaries being paid in the banking business and would receive $500 per month as a starting salary.

. · While the bank was in the process of organization none of the employees received wages. The bank received its charter on December 18, 1957, and salaries after that date were paid by the bank and under the control of its board of directors.

Plaintiff testified that about 30 days after he started to work, Jerry Zelinski, who was later to become the senior vice-president of the new bank and still later State banking commissioner, advised plaintiff he could expect a starting salary after the bank opened in the amount of $500. He also testified that 2 weeks subsequent to the statement of Mr. Zelinski, Mr. Verhelle confirmed the salary item by saying "we will give you about $500 to start, to build into about $650." On December 22, 1957, plaintiff received his first pay check in the amount of $1,550 from Mr. Verhelle. Plaintiff testified he must have looked dissatisfied with the amount of the check, since 7 months at $500 per month would have been $3,500, and that Mr. Verhelle said, "Paul, I'll settle with you for the balance later." Plaintiff asked Mr. Verhelle whether this meant at the rate of $500 per month, and Mr. Verhelle replied, "That's right, $2,000."

Plaintiff testified that early in January of 1958, the personnel director of defendant bank told plaintiff his salary would be $325 per month starting January 1st. Plaintiff replied that Mr. Verhelle and Mr. Zelinski had told him his salary would be $500 per month. The personnel director suggested that if plaintiff was not satisfied with the salary, he could discuss it with Mr. Verhelle. He attempted to see Mr. Verhelle, but plaintiff testified Verhelle refused to see him. Plaintiff continued in the bank's employ until August 14, 1958, at which time the personnel director dismissed him. Plaintiff testified the personnel director asked plaintiff to sign a release at the time he was discharged, but he refused. .

Exhibit 3 was the final pay check in the amount of $305.59 dated August 14, 1958. The back of the check bore the notation "Salary and overtime pay through August 14, 1958, plus 2 weeks' severance pay in lieu of notice." Plaintiff did not indorse the check. The Public Bank accepted the check for deposit to plaintiff's account without indorsement. Plaintiff testified he then attempted to see Mr. Verhelle, but Verhelle refused to see him, although plaintiff waited about 2 hours.

Plaintiff testified the reason he continued to work for defendant bank was the representation of Mr. Verhelle that he would make up the difference. Plaintiff further testified as follows:

"Q. Do you remember now what that last check was, for how much it was?

"A. $302, I believe it was, or something like that.

"Q. Do you remember now whether there was any indorsement on the back of it, that had to do with any statement of alleged release?

"A. There was no indorsement on the back of that check when I signed it."

Subsequently, plaintiff was asked on redirect examination the following questions and gave the following answers:

"Q. The check for $305.59 does not contain your indorsement?

"A. No, it does not.

"Q. Do you recall whether that typewriting was ever there, that you saw it?

"A. No, I do not."

The real crux of the issue in this appeal appears to be whether plantiff's acceptance of his final pay check was in full release and satisfaction of all prior wage claims by plaintiff. It is the contention of defendants that the salary check with the notation on the back, retained and deposited by plaintiff,

amounted to an accord and satisfaction and was a complete defense as a matter of law. It is plaintiff's position that the check and the testimony with reference to it constituted a question of fact for the jury as to whether there was an accord and satisfaction.

Defendants cite numerous cases in support of their position, but each is distinguishable from the instant case. Unlike the instant case, there was no dispute in the cases cited with respect to the facts surrounding the check and its acceptance.

Here plaintiff testified that shortly after starting work, Zelinski, a vice-president of the bank, told him he would be paid $500 per month. This was confirmed, according to his testimony, by the president and codefendant Joseph Verhelle. Some 7 months later Verhelle again stated he would settle for the balance claimed by plaintiff at a later date. Plaintiff further testified there was no indorsement on the back of the final check when he deposited it to his account in the bank. The testimony of plaintiff as to the oral agreement with the defendants in regard to the amount of wages to be paid and the nonexistence of an indorsement typed on the final check to release the bank created a conflict with the testimony of defendants which made the determination of the accord and satisfaction a disputed question of fact to be determined by the jury.

It has long been settled in this jurisdiction that a jury question is presented where there is a dispute as to whether an accord and satisfaction is accomplished as to claims allowed by a creditor. *Mortlock* v. *Williams*, 76 Mich 568.

In *Block* v. *Crawford,* 114 Mich 608, defendant was permitted to go to the jury where a question arose as to whether the account between the parties had been settled. So, too, in *Chapel* v. *Clark*, 117 Mich 638 (72 Am St Rep 587), where a receipt was given by an architect for money due, the court there said

there was a clear dispute as to the circumstances and reasons for giving the receipt, which made it a proper subject for the determination of the jury.

In *Cleveland* v. *Rothschild,* 132 Mich 625, where the defendant's testimony tended to establish a release and plaintiff's testimony that the arrangement was not concluded and the release never delivered, the court held it was a question of fact for the jury.

The instant case would seem to be quite similar to and controlled by *Stevens* v. *Michigan Soap Works,* 134 Mich 350, where plaintiff, who was employed at a salary of $25 per week and was paid $20 per week, the last check reciting it was in full to its date, did not waive his right to the balance, if he insisted at different times he was entitled to more and there was an agreement to hold the question in abeyance, and the check was accepted under a reservation as to his right to assert his claim later.

This Court upheld the trial court's refusal to grant a motion for directed verdict by defendant in *Durkin* v. *Everhot Heater Company,* 266 Mich 508, 513, saying:

"To work an accord and satisfaction the tender of payment as being *in full* should be made in unequivocal terms, so that the creditor in accepting the conditional payment will surely do so understandingly. * * * The law requires that in order to accomplish an accord and satisfaction the statement that it is so intended must be clear, full and explicit."

This Court has held that the retention and use of a check accompanied by a letter stating it is in full of a certain account does not preclude action for a balance in fact due. *Goldsmith* v. *Lichtenberg,* 139 Mich 163. This rule was again stated in *Hoey* v. *Ross,* 189 Mich 193, 197, where this Court held:

"It is the rule in this State that, if it is doubtful if an accord—an agreement—is established, the question is for the jury."

The rule has been stated at numerous times that—unless the evidence is insufficient to submit to the jury, or is undisputed and not open to opposing inferences—accord and satisfaction, including the various elements thereof, is a question of fact to be determined by the jury or by the court where it is the trier of the facts.

The testimony of plaintiff presented a question of fact from which the jury could reasonably conclude a separate agreement had arisen between the parties or that no accord and satisfaction resulted.

No error was committed in permitting the matter to go to the jury.

The remaining question deals with the charge of the court to the jury that failure to have Mr. Zelinski present and testify was the responsibility of defendants and, since Zelinski was not present to testify, it could be assumed by the jury that his testimony would be favorable to plaintiff.

The trial court charged the jury as follows:

"I further charge you, as a matter of law, that upon the failure to produce a witness it can be assumed that his testimony would be unfavorable to the side of the case which should have called him. There has been much testimony and much argument here with reference to Mr. Zelinski. You may assume, in your sole discretion, that the side which should have called him and didn't call him, you may assume that if he had been called his testimony would have been unfavorable. There is a great deal of dispute as to which side should have called him and that too must rest in your discretion."

A lengthy discussion with reference to this portion of the charge took place in chambers and out of the

presence and hearing of the jury. Following the discussion, the judge concluded his charge to the jury as follows:

"Members of the jury, there is 1 point I want to clarify before you retire, and clarify a point of law.

"The law is that upon the failure of a party who should produce a witness, upon the failure of that party to produce a witness, you can in your discretion and in your sole discretion, you can assume that the testimony of that witness would be unfavorable to the side which should have called him.

"I will just comment on 1 or 2 other facts of evidence. That first is a matter that is totally and completely within your discretion. Mr. Zelinski was at the time of the occurrences in this case the vice-president and agent of the defendant. Mr. Zelinski is today in no way connected with the defendant. He is the State banking commissioner."

This was an erroneous charge. See the lengthy discussion by Justice CARR in *Barringer* v. *Arnold,* 358 Mich 594, 601–605.

In this case Mr. Zelinski was equally available to the plaintiff as to the defendant. He was within reach of the process of the court. Either party had, as far as the record shows, equal facilities for bringing him into court as a witness; and the mere fact that both parties failed to do so raised no presumption that Zelinski, if present, would testify against defendants' theory.

However, defendants failed to introduce testimony to refute plaintiff's testimony in regard to his conversation with Mr. Zelinski concerning salary. In view of this fact, the jury could have reached the same verdict without the assistance of the court's erroneous charge as to the presumption resulting from a party's failure to call a witness.

We conclude that although the charge was error, it was not prejudicial and reversible error.

The verdicts and judgments are affirmed. Plaintiff shall have costs.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.