**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:       Justices:
Clifford W. Taylor    Michael F. Cavanagh
                      Elizabeth A. Weaver
                      Marilyn Kelly
                      Maura D. Corrigan
                      Robert P. Young, Jr.
                      Stephen J. Markman

FILED MARCH 23, 2006

HOERSTMAN GENERAL CONTRACTING,
INC.,

  Plaintiff-Appellee,

v             No. 126958

JUANITA REMS HAHN and C. RONALD
HAHN,

  Defendants-Appellants,

and

TEACHERS CREDIT UNION,

  Defendant.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

  This case calls on us to decide whether an accord and satisfaction existed between the parties. The Court of Appeals found that it did not. We disagree and rule that the parties reached an accord and satisfaction. Therefore, we reverse the decision of the Court of Appeals and remand the case to the trial court for entry of judgment in favor of defendants.

SUBSTANTIVE FACTS AND PROCEDURAL HISTORY

This case centers on a contract to remodel and reconstruct a lakeside residence in Edwardsburg, Michigan,[1] made between plaintiff, Hoerstman General Contracting, Inc., and defendants Juanita and Ronald Hahn, the owners. Unfortunately, several unforeseen events during construction caused significant delay and cost overruns. When plaintiff did not meet the expected deadline to complete the work, Ronald Hahn informed plaintiff's owner that he wanted the job finished no matter the expense. Plaintiff agreed to work under these conditions if Ronald agreed to pay the extra costs. Ronald made it clear that he was not concerned with the price.

Plaintiff followed Ronald's oral instructions on changes to the project. These were not minor modifications. They included moving walls and tearing up concrete floors. According to plaintiff, a later-compiled written list of the oral changes to the contract covered over ten pages. Despite these significant alterations, Ronald refused to agree in writing to any changes to the existing contract.

Defendants acknowledged that they owed more than the original bid price and paid plaintiff $125,000. But plaintiff claimed defendants owed an additional $32,750. In an apparent attempt to settle the dispute, plaintiff sent a letter to

---

[1] Originally, the residence belonged solely to Juanita Rems. Juanita married during the course of construction and added her husband, C. Ronald Hahn, to the title.

defendants asking for $16,910.79. Plaintiff indicated that it would provide the lien waiver and close the account in exchange for payment of the amount requested.

Defendants did not pay the $16,910.79. Instead, they replied with a letter in which they calculated the balance due at $5,144.79. They included with the letter their check for that amount. They wrote "final payment" on the check. In the letter, they indicated that they believed that their payment of $5,144.79 closed the account. The letter provided:

> If we send you a check for $5144.79 we will consider this account closed and will not expect discussion of the other * items.[2] We will then expect the lein [sic] waiver to be sent. If this is not acceptable, we will have to resort to arbitration per attorney [sic].

Plaintiff sought legal advice. Its attorney crossed out the words "final payment" on the check and advised plaintiff to deposit it. Plaintiff followed this advice, credited defendants' account in the amount of $5,144.79, and did not close the account.

When defendants made no additional payments, plaintiff brought suit seeking damages and foreclosure of its construction lien. Defendants counterclaimed for amounts they believed they had overpaid. In their answer to plaintiff's complaint, defendants asserted the affirmative defense of accord and satisfaction. After a bench trial, the court awarded plaintiff approximately

---

[2] The "* items" refers to a list of disputed charges for changes made in the project.

3

$26,000 after setting off $5,800 on defendants' counterclaim. The court did not explicitly rule on the issue of accord and satisfaction.

Both parties appealed to the Court of Appeals. The Court of Appeals ruled that the words "final payment" on the check were not sufficient to inform plaintiff that acceptance of the check discharged the entire claim. *Hoerstman Gen Contracting, Inc v Hahn*, unpublished opinion per curiam of the Court of Appeals, issued June 15, 2004 (Docket No. 244507). This Court granted leave to appeal limited to whether an accord and satisfaction occurred in this case. 472 Mich 898 (2005).

STANDARD OF REVIEW

The existence of an accord and satisfaction may be decided as a question of law if the facts of the case are undisputed and not open to opposing inferences. *Urben v Pub Bank*, 365 Mich 279, 286; 112 NW2d 444 (1961). During oral argument, the parties conceded that the relevant facts here are not in dispute. Therefore, the case presents a question of law which we review de novo. *Anzaldua v Band*, 457 Mich 530, 533; 578 NW2d 306 (1998).

ACCORD AND SATISFACTIONS

An accord and satisfaction is an affirmative defense[3] grounded in contract principles. An accord is a contract and requires a meeting of the minds of those

---

[3] MCR 2.111(F)(3) provides:

(continued…)

4

who enter into it. *Fritz v Marantette*, 404 Mich 329, 334; 273 NW2d 425 (1978), quoting *Gitre v Kessler Products Co*, 387 Mich 619, 624; 198 NW2d 405 (1972). A satisfaction is the discharge of the debt occurring after acceptance of the accord.[4]

Cases in which an accord and satisfaction defense is relevant involve a good-faith dispute about an unliquidated amount owing under a contract. One

(…continued)

    *Affirmative Defenses.* Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118. Under a separate and distinct heading, a party must state the facts constituting:

    (a) an affirmative defense, such as contributory negligence; the existence of an agreement to arbitrate; assumption of risk; payment; release; satisfaction; discharge; license; fraud; duress; estoppel; statute of frauds; statute of limitations; immunity granted by law; want or failure of consideration; or that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery;

    (b) a defense that by reason of other affirmative matter seeks to avoid the legal effect of or defeat the claim of the opposing party, in whole or in part;

    (c) a ground of defense that, if not raised in the pleading, would be likely to take the adverse party by surprise.

[4] Black's Law Dictionary (7th ed) provides a useful definition of "accord and satisfaction":

    An agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the debt by the substituted performance. • The new agreement is called the *accord*, and the discharge is called the *satisfaction*. [Emphasis in original.]

party makes a tender in satisfaction of the claim (an accord). The other accepts or rejects the accord. If the second party accepts the tender, there is both an accord and a satisfaction. See *Nationwide Mut Ins Co v Quality Builders, Inc*, 192 Mich App 643, 647; 482 NW2d 474 (1992), citing *Shaw v United Motors Products Co*, 239 Mich 194; 214 NW 100 (1927).

In this Court's handling of common-law accord and satisfaction, two lines of cases developed. The first holds that whether there was a sufficient meeting of the minds for an accord and satisfaction is a question for the jury.[5] The second holds that the required meeting of the minds is implied as a matter of law by the acceptance of the offer. The fact that the recipient altered or crossed out the accord is irrelevant.[6]

As in this case, the affirmative defense of accord and satisfaction often involves the use of a check. A check is a negotiable instrument entered into between the maker and the payee. *Huler v Nasser*, 322 Mich 1, 6; 33 NW2d 637 (1948). As will be demonstrated later, when the Legislature enacted MCL

---

[5] See *Fritz*, 404 Mich 329; *Gitre*, 387 Mich 619; *Urben*, 365 Mich 279; *Hoey v Ross*, 189 Mich 193; 155 NW 375 (1915); *Stevens v Michigan Soap Works*, 134 Mich 350; 96 NW 435 (1903); *Cleveland v Rothschild*, 132 Mich 625; 94 NW 184 (1903); *Block v Crawford*, 114 Mich 608; 72 NW 602 (1897); *Mortlock v Williams*, 76 Mich 568; 43 NW 592 (1889).

[6] See *Lehany v New York Life Ins Co*, 307 Mich 125; 11 NW2d 830 (1943); *Eisenberg v CF Battenfeld Oil Co*, 251 Mich 654; 232 NW 386 (1930); *Deuches v Grand Rapids Brass Co*, 240 Mich 266; 215 NW2d 392 (1927); *Shaw*, 239 Mich 194; *Stone v Steil*, 230 Mich 249; 202 NW 982 (1925).

440.3311, it followed the second line of cases. This effectively repudiates any application of the first line of cases to accord and satisfactions involving negotiable instruments, leaving MCL 440.3311 to control all accord and satisfactions involving negotiable instruments.

UCC PREEMPTION IN CASES INVOLVING NEGOTIABLE INSTRUMENTS

In 1964, the Michigan Legislature enacted the Uniform Commercial Code. In 1993, the Legislature added to Article 3 of the UCC a provision governing accord and satisfaction. Article 3 is known as the "Uniform Commercial Code-Negotiable Instruments." MCL 440.3101. It is compendious and by its terms is intended to apply to all negotiable instruments with limited exceptions not relevant here.[7]

MCL 440.3311 of Article 3 provides:

> (1) If a person against whom a claim is asserted proves that (*i*) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (*ii*) the amount of the claim was

---

[7] MCL 440.3102 specifically provides:

> (1) This article applies to negotiable instruments. It does not apply to money, to payment orders governed by article 4a, or to securities governed by article 8.

> (2) If there is conflict between this article and article 4 or 9, articles 4 and 9 govern.

> (3) Regulations of the board of governors of the federal reserve system and operating circulars of the federal reserve banks supersede any inconsistent provision of this article to the extent of the inconsistency.

unliquidated or subject to a bona fide dispute, and (*iii*) the claimant obtained payment of the instrument, the following subsections apply.

(2) Unless subsection (3) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

(3) Subject to subsection (4), a claim is not discharged under subsection (2) if either of the following applies:

(a) The claimant, if an organization, proves that (*i*) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (*ii*) the instrument or accompanying communication was not received by that designated person, office, or place.

(b) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This subdivision does not apply if the claimant is an organization that sent a statement complying with subdivision (a)(*i*).

(4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

Whether a statutory scheme such as MCL 440.3311 preempts the common law is a question of legislative intent. *Millross v Plum Hollow Golf Club*, 429 Mich 178, 183; 413 NW2d 17 (1987).

In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the

8

Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter. [*Id.*, citing 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441.]

The Legislature has the authority to abrogate the common law. *Rusinek v Schultz, Snyder & Steele Lumber Co*, 411 Mich 502, 507-508; 309 NW2d 163 (1981). When it does so, it should speak in no uncertain terms. *Marquis v Hartford Accident & Indemnity* (*After Remand*), 444 Mich 638, 652 n 17; 513 NW2d 799 (1994), quoting *Bandfield v Bandfield*, 117 Mich 80, 82; 75 NW 287 (1898).

As already noted, Article 3 of the UCC is comprehensive. It is intended to apply to nearly every situation involving negotiable instruments. See MCL 440.3102. The language contained in MCL 440.3311 completely covers the details of accord and satisfactions.

MCL 440.3311(3) and (4) contain exceptions or conditions. Their enumeration eliminates the possibility of their being other exceptions under the legal maxim *expressio unius est exclusio alterius*.[8] The maxim is a rule of construction that is a product of logic and common sense. *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 362; 459 NW2d 279 (1990), quoting 2A Sands, Sutherland Statutory Construction (4th ed), § 47.24, p 203. This Court long ago stated that no maxim is more uniformly used to properly construe

_____

[8] "The expression of one thing is the exclusion of another." Black's Law Dictionary (7th ed), p 1635.

statutes. *Taylor v Michigan Public Utilities Comm*, 217 Mich 400, 403; 186 NW 485 (1922).

Therefore, the language of the statute shows that the Legislature covered the entire area of accord and satisfactions involving negotiable instruments. It clearly intended that the statute would abrogate the common law on this subject.[9]

Our conclusion is buoyed by the UCC comment to MCL 440.3311. It notes that conflict existed previously over whether the common law was modified by the predecessor of MCL 440.3311, former section 1-207. By updating Article 3, it informs us, the Legislature intended to alleviate these conflicts and update the law of accord and satisfaction. Specifically, the comment provides:

> As part of the revision of Article 3, Section 1-207 has been amended to add subsection (2) stating that Section 1-207 "does not apply to an accord and satisfaction." Because of that amendment and revised Article 3, Section 3-311 governs full satisfaction checks. Section 3-311 follows the common law rule with some minor variations to reflect modern business conditions. [MCLA 440.3311, comment 3.]

These comments support a finding of preemption. They demonstrate the Legislature's intent to modify and update the common law. Therefore, we hold that MCL 440.3311, not the common law, applies to an accord and satisfaction involving a negotiable instrument such as a check. And we apply this statute to the case at hand.

_____

[9] We note that this conclusion does not eliminate common-law accord and satisfactions entirely. An accord and satisfaction can exist without the use of a negotiable instrument. For instance, the parties could use cash or goods to satisfy a debt rather than a check. MCL 440.3311 would not apply in those situations.

10

The first requirement of an accord and satisfaction is a good-faith tender to the claimant as full satisfaction of the claim. MCL 440.3311(1)(*i*). Article 3 contains an internal definition of "good faith": "'Good faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing." MCL 440.3103(1)(d).

Defendants demonstrated "honesty" in their settlement offer to plaintiff. They offered plaintiff what defendants thought was a fair deal. In their letter to plaintiff, as part of the accord, defendants went through the various additions to the construction contract. They estimated what each cost and listed each disputed item. Juanita Rems Hahn gave a full explanation of why defendants thought they should not have to pay for the disputed items. Defendants' accounting also included a detailed list of all payments made. In total, the accounting covers several pages.

After adding their estimation of all costs and subtracting all the payments, defendants arrived at $5,144.79 as the amount of the accord and tendered it to plaintiff. Given that this tender was made in such detail and with clear explanations of its reasoning, we conclude that defendants' tender was made in "good faith" as required by MCL 440.3311(1)(*i*).

The second requirement of an accord and satisfaction involving a negotiable instrument is that the claim be unliquidated or subject to a bona fide dispute. MCL 440.3311(1)(*ii*). Black's Law Dictionary (7th ed) defines an

"unliquidated claim" as "a claim in which the liability of the party or the amount of the claim is in dispute."[10]

Plaintiff performed extra work without an agreement regarding the amount to be paid. Because the cost of the changes and overruns were left unspecified and are in dispute, the claim for them is unliquidated.

Plaintiff argues the contrary. It asserts that, to the extent that defendants conceded that they owed part of the disputed debt, that portion of the debt was liquidated. This Court previously rejected this argument:

> "The fact that part of the claim was conceded did not divide the liability into two liquidated claims. Whatever the rule in other jurisdictions, this court holds that such a claim is unliquidated and payment of the conceded amount furnishes consideration for settlement of the whole." [*Lehaney v New York Life Ins Co*, 307 Mich 125, 131; 11 NW2d 830 (1943), quoting *Long v Aetna Life Ins Co*, 259 Mich 206, 209; 242 NW 889 (1932).]

See also *Tanner v Merrill*, 108 Mich 58; 65 NW 664 (1895). Defendants' concession of part of the debt has no effect on the question whether the claim was liquidated.

The third requirement contained in MCL 440.3311(1) is that the claimant must obtain payment of the instrument. MCL 440.3311(1)(*iii*). The requirement was satisfied here because plaintiff negotiated defendants' check by depositing it.

---

[10] The claim must be in dispute at the time of the accord. Contract principles apply to it. *Fritz*, 404 Mich 334. The unliquidated nature of the claim allows for consideration on both sides and a meeting of the minds. "[T]he compromise agreement of one party became the supporting consideration for that of the other." *Empire Industries, Inc v Northern Assurance Co, Ltd*, 342 Mich 425, 430; 70 NW2d 769 (1955).

Once the first three requirements are satisfied, the question becomes whether the claim was discharged. Under the statute, there are two ways to discharge a claim. According to MCL 440.3311(2), a claim is discharged if the instrument, or an accompanying written communication, contains a conspicuous statement that the tender is in full satisfaction of the claim.[11] Second, under MCL 440.3311(4), a claim is discharged if the claimant, or the claimant's agent, knew that the defendant tendered the instrument in full satisfaction of the claim.

MCL 440.3311(4) controls this case. Plaintiff's president testified that he knew defendants' intention in sending the letter and check. He stated that defendants intended the check as a final payment. He claimed merely that he believed that defendants' attempt to establish an accord did not satisfy Michigan law. Plaintiff's president consulted an attorney on this question, and counsel erroneously informed him that the accord would be valid only in Indiana, not in Michigan.

MCL 440.3311(4) contains no exception for a mistaken understanding of the law. It requires only that a claimant know "that the instrument was tendered in full satisfaction of the claim." Plaintiff knew that defendants intended the payment to be final and in full satisfaction of the claim. Therefore, an accord and satisfaction exists, despite plaintiff's mistake of law.

---

[11] MCL 440.3311(3) contains two exceptions to MCL 440.3311(2). Neither is applicable here.

Even if we did not find a discharge of the debt under MCL 440.3311(4), we would find one under MCL 440.3311(2). That subsection provides:

> Unless subsection (3) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim. [MCL 440.3311(2).]

MCL 440.1201(10) defines "conspicuous."

> "Conspicuous": A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: non-negotiable bill of lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

The Uniform Commercial Code comment further discusses the meaning of "conspicuous." Comment 4 of MCL 440.3311 opines: "If the claimant can reasonably be expected to examine the check, almost any statement on the check should be noticed and is therefore conspicuous."

In this case, defendants wrote the words "final payment" on the comment line of the check. They were in capital letters and not obfuscated in any way. They meet the definition of "conspicuous" because they were written so that someone would notice them. MCL 440.1201(10). Therefore, inclusion of "final payment" on the check satisfied the requirements of MCL 440.3311(2).

The letter sent with the check also contains a conspicuous statement that the check discharges the claim. Specifically, the letter provided:

14

> If we send you a check for $5144.79 we will consider this account closed and will not expect discussion of the other * items. We will then expect the lein [sic] waiver to be sent. If this is not acceptable, we will have to resort to arbitration per attorney [sic].

This statement was the concluding paragraph, directly above the signature line. It was not placed in a footnote or other location that plaintiff might skip over while reading. Therefore, it too was a "conspicuous" statement that the check was tendered as full satisfaction of the claim, and that the claim was discharged.[12]

Two exceptions to MCL 440.3311(2) exist in MCL 440.3311(3). Neither applies to this case. Defendants' tender satisfied all the requirements of MCL 440.3311. Therefore, an accord and satisfaction occurred. Plaintiff's acceptance of the check discharged the claim.

CONCLUSION

---

[12] Plaintiff failed to note the existence of MCL 440.3311 even on appeal. Therefore, it argued that the tender must be so clear that it is not susceptible to any other interpretations. It argued that use of the word "expect" and reference to arbitration meant that the tender did not meet this mark.

We first note that, despite what the common law may state, MCL 440.3311 of the UCC contains no such requirement. Regardless, we find plaintiff's argument unconvincing. The statement contained in the letter specifically provides that the account will be closed and no further discussion will occur. Moreover, defendants state that they expect to receive the lien waiver from plaintiff. Plaintiff admits that lien waivers issue only after final payment. The reference to arbitration does not detract from this. Defendants were simply informing plaintiff what would happen if it chose not to accept the check. Any other reading of the reference to arbitration would violate common sense. Therefore, the statement in the letter was sufficient to inform plaintiff of the meaning of the tender.

15

We find that by enacting MCL 440.3311 of the Uniform Commercial Code, the Legislature intended to preempt the common law on accord and satisfactions in the area of negotiable instruments.

Therefore, the trial court erred in not applying the UCC to this case. The Legislature used clear language to describe in detail a course of conduct to pursue in order to accomplish an accord and satisfaction. It designated specific limitations and exceptions to the rule.

Applying MCL 440.3311, we find that defendants sufficiently met their burden of proof on the affirmative defense of accord and satisfaction. Therefore, we reverse the decision of the Court of Appeals and remand the case to the circuit court for entry of judgment in favor of defendants.

Reversed and remanded to the circuit court.

Marilyn Kelly<br>
Clifford W. Taylor<br>
Michael F. Cavanagh<br>
Elizabeth A. Weaver<br>
Maura D. Corrigan<br>
Robert P. Young, Jr.<br>
Stephen J. Markman