**Lansing, Michigan**

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED APRIL 20, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

No. 141837

ANGEL MORENO, JR.,

        Defendant-Appellant.

BEFORE THE ENTIRE BENCH

HATHAWAY, J.

In this case, we review whether defendant was properly charged with resisting and obstructing a police officer under MCL 750.81d after defendant struggled with officers who had entered his home unlawfully. To resolve this issue, we must address whether MCL 750.81d abrogates the common-law right to resist illegal police conduct, including unlawful arrests and unlawful entries into constitutionally protected areas. We conclude that the statute did not abrogate this right.

While the Legislature has the authority to modify the common law, it must do so by speaking in "no uncertain terms."[1]  Neither the language of MCL 750.81d nor the legislative history of this statute indicates with certainty that the Legislature intended to abrogate the common-law right to resist unlawful arrests or other invasions of private rights.  We cannot presume that the Legislature intended to abrogate this right.  Therefore, we overrule *People v Ventura*, 262 Mich App 370; 686 NW2d 748 (2004), to the extent that it held that the Legislature affirmatively chose to modify the traditional common-law rule that a person may resist an unlawful arrest.  Because the Court of Appeals in this case relied on *Ventura* and extended its holding to the context of illegal entries of the home, we reverse the judgment of the Court of Appeals and remand this matter to the trial court.  On remand, we instruct the trial court to grant defendant's motion to quash the charges on the basis of its ruling that the officers' conduct was unlawful.

## I.  FACTS AND PROCEDURAL HISTORY

This case arises from a physical struggle that occurred between defendant and two Holland police officers when the officers sought to enter defendant's home without a warrant.  As a result of the struggle, defendant was charged with resisting and obstructing a police officer and resisting and obstructing a police officer causing injury in violation of MCL 750.81d (1) and (2).

On the morning of the incident, Officer Troy DeWys and Officer Matthew Hamberg were searching for Shane Adams.  Adams had several outstanding warrants.

---

[1] *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006).

Defendant's house was in the immediate vicinity of where Adams's vehicle was parked, so the officers knocked on defendant's front and back doors to inquire about Adams. While outside the house, Officer DeWys heard voices and people running inside the house. He identified himself as a police officer and stated that he wanted to ascertain the identities of the people inside the house. Officer Hamberg looked through a basement window and could see empty bottles of alcohol and people trying to hide.

Approximately 15 minutes after the officers had knocked on the doors, Mandy McCarry opened the front door. Officer DeWys smelled "intoxicants and burnt marijuana." McCarry admitted that underage persons were consuming alcohol inside the house, but Officer DeWys told her that he was not interested in writing "a bunch of minor in possession tickets." Officer DeWys told McCarry that he just wanted to identify who was inside the house. Officer DeWys asked McCarry if she knew the owner of the vehicle parked in the street. McCarry asked the officers if they were looking for Adams and stated that he was not inside the house. McCarry told the officers that they could not come inside the house without a warrant.

Officer DeWys then informed McCarry that the officers were entering the house to "secure it" while they waited for a warrant. At that time, defendant came to the front door and demanded that the officers obtain a warrant before entering his house. Defendant then attempted to close the door, but Officer Hamberg put his shoulder against the door to prevent defendant from closing it. A struggle ensued between defendant and the officers. Ultimately, the officers pulled defendant from his doorway, physically subdued him, and arrested him. Officer DeWys suffered a torn hamstring and bruised elbow in the struggle.

Defendant was charged with assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), and assaulting, resisting, or obstructing a police officer causing injury, MCL 750.81d(2). Defendant was bound over for trial. He moved to quash the charges, arguing that the officers' entry into his home was unlawful. The trial court concluded that the officers had unlawfully entered defendant's home, specifically ruling that there were no exigent circumstances that would have provided an exception to the warrant requirement. Nevertheless, the trial court concluded that a "lawful" action by an officer is not a requirement of MCL 750.81d and, therefore, denied defendant's motion to quash the charges.

Defendant appealed as of right. The Court of Appeals affirmed the trial court's decision in an unpublished opinion per curiam.[2] The Court of Appeals relied on *Ventura* for the proposition that the lawfulness of police conduct is no longer an element of the offenses of resisting and obstructing because MCL 750.81d abrogated the common-law right to resist an unlawful arrest.[3] Therefore, the Court of Appeals concluded that the officers' conduct in forcibly entering defendant's home did not have to be lawful in order for defendant to be charged under MCL 750.81d.[4] This Court granted defendant's application for leave to appeal.[5]

---

[2] *People v Moreno*, unpublished opinion per curiam of the Court of Appeals, issued June 10, 2010 (Docket No. 294840).

[3] *Id*. at 7-8.

[4] *Id*. at 7.

[5] *People v Moreno*, 488 Mich 1010 (2010).

4

## II.  STANDARD OF REVIEW

This case involves the interpretation and application of a statute, which is a question of law that this Court reviews de novo.[6]

## III.  ANALYSIS

### A.  THE LANGUAGE OF MCL 750.81d DOES NOT SUPPORT ABROGATION

The issue before this Court is whether a person present in his or her own home can resist a police officer who unlawfully and forcibly enters the home or whether MCL 750.81d prohibits resisting unlawful actions by a police officer.  Specifically, we must decide whether the Legislature intended to abrogate the common-law right to resist an unlawful arrest with its 2002 enactment of MCL 750.81d.

MCL 750.81d states in pertinent part:

> (1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

> (2) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care to that person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.

> (3) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a serious impairment of a body function of that person is guilty of a felony punishable by

---

[6] *People v Lee*, 489 Mich 289, 295; 803 NW2d 165 (2011); *Miller-Davis Co v Ahrens Constr, Inc*, 489 Mich 355, 361; 802 NW2d 33 (2011).

5

imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.

(4) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing the death of that person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.

\* \* \*

(7) As used in this section:

(a) "Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

When interpreting statues, this Court must "ascertain and give effect to the intent of the Legislature."[7] The words used in the statute are the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the context within which they are used in the statute.[8] In interpreting a statute, this Court avoids constructions that would render any part of the statute surplusage or nugatory.[9]

In addition to these basic rules of statutory interpretation, this Court must also adhere to the traditional rules concerning abrogation of the common law. The common law remains in force unless it is modified.[10] We must presume that the Legislature

---

[7] *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002).

[8] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

[9] *People v McGraw*, 484 Mich 120, 126; 771 NW2d 655 (2009), citing *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

[10] *Wold Architects & Engineers v Strat*, 474 Mich 223, 233; 713 NW2d 750 (2006).

6

"know[s] of the existence of the common law when it acts."[11]  Accordingly, this Court has explained that "[t]he abrogative effect of a statutory scheme is a question of legislative intent"[12] and that "legislative amendment of the common law is not lightly presumed."[13]  While the Legislature has the authority to modify the common law, it must do so by speaking in "'no uncertain terms.'"[14]  Moreover, this Court has held that "statutes in derogation of the common law must be strictly construed" and shall "not be extended by implication to abrogate established rules of common law."[15]  In this case, we must be mindful of the rules regarding abrogation of the common law when determining whether the Legislature, in enacting MCL 780.81d, intended to abrogate the common-law right to resist unlawful police conduct.

Defendant was charged with resisting and obstructing a police officer in violation of MCL 750.81d.  In Michigan, obstructing a police officer has been recognized as a common-law crime, as well as an offense governed by statute.[16]  In addition, the right to resist *unlawful* arrests, and other *unlawful* invasions of private rights, is well established

---

[11] *Id.* at 234; see also *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 28; 780 NW2d 272 (2010) (quoting *Wold Architects*).

[12] *Dawe*, 485 Mich at 28.

[13] *Wold Architects*, 474 Mich at 233.

[14] *Dawe*, 485 Mich at 28, quoting *Hoerstman*, 474 Mich at 74.

[15] *Rusinek v Schultz, Snyder & Steele Lumber Co*, 411 Mich 502, 508; 309 NW2d 163 (1981) (citation omitted).

[16] *People v Krum*, 374 Mich 356, 361-362; 132 NW2d 69 (1965).

7

in our state's common law.[17]  In explaining the common-law right to resist an unlawful arrest, this Court has stated that "one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest" and that "the basis for such preventive or resistive action is the illegality of an officer's action, to which [a] defendant immediately reacts."[18]

In *Ventura*, the Court of Appeals compared the prior version of the resisting-arrest statute, MCL 750.479, to the current version, MCL 750.81d.  The prior version stated in pertinent part:

> Any person who shall knowingly and willfully . . . obstruct, resist, oppose, assault, beat or wound . . . any . . . person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor . . . .  [MCL 750.479, as enacted by 1931 PA 328.]

Noting that the prior version, MCL 750.479, included a reference to the lawfulness of an officer's actions, the Court of Appeals in *Ventura* then turned to the language of MCL 750.81d.[19]  The Court stated that it could not find any similar reference to lawfulness in MCL 750.81d.[20]  The Court also noted that other jurisdictions have found the right to

---

[17] *Id.*; *People v Clements*, 68 Mich 655, 658; 36 NW 792 (1888) (recognizing the right to reasonably resist an attempted illegal seizure of property by the sheriff and noting that "[n]o officer can be legally authorized to invade private rights in any such manner"); *People v MacLeod*, 254 Mich App 222, 226; 656 NW2d 844 (2002) (holding that the lawfulness of the arrest was an element of the prior resisting-and-obstructing statute).

[18] *Krum*, 374 Mich at 361.

[19] *Ventura*, 262 Mich App at 374-375.

[20] *Id.* at 375.

8

resist an unlawful arrest to be "outmoded in our contemporary society."[21]  The Court

concluded that the Legislature had made an "obvious affirmative choice to modify the

traditional common-law rule that a person may resist an unlawful arrest."[22]  We disagree.

We hold that MCL 750.81d did not abrogate the right to resist unlawful police conduct

and that *Ventura* was wrongly decided.

A fundamental principle of statutory construction is that common-law meanings

apply unless the Legislature has directed otherwise.[23]  If the Legislature intended to

abrogate the common-law right to resist unlawful conduct by an officer, it had to do so by

speaking in "'no uncertain terms.'"[24]  Significantly, nowhere in MCL 750.81d does the

Legislature state that the right to resist unlawful conduct by an officer no longer exists.[25]

---

[21] *Id.* at 376 (citation and quotation marks omitted).

[22] *Id.* at 376-377.

[23] *People v Young*, 418 Mich 1, 15; 340 NW2d 805 (1983); see also Const 1963, art 3, § 7 ("The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.").

[24] *Dawe*, 485 Mich at 28, quoting *Hoerstman*, 474 Mich at 74.

[25] The Legislature is aware of how to draft statutes when it is abrogating common-law principles.  For example, in the context of self-defense, the Legislature changed the common-law duty to retreat by enacting MCL 780.972, which specifically explains that there is no longer a duty to retreat under certain enumerated circumstances.  The Legislature also enacted MCL 780.973 and MCL 780.974, which explicitly clarify that certain other aspects of the common law relating to self-defense were not abrogated.  In enacting MCL 750.81d, the Legislature could have easily abrogated the right to resist an unlawful act by an officer by simply stating that the provision could be violated regardless of whether an officer's actions are lawful.  The Legislature chose not to include such language.

9

The prior resisting-arrest statute, MCL 750.749 as enacted by 1931 PA 328, prohibited obstructing or resisting a person "authorized by law to maintain and preserve the peace, in their lawful acts . . . ."[26] The current resisting-arrest statute, MCL 750.81d, prohibits obstructing or resisting an "individual" who is "performing his or her duties." We cannot conclude that the common-law right to resist an unlawful act by an officer ceased to exist merely because the Legislature did not include the word "lawful" in this phrase from MCL 750.81d. In fact, this Court has recently clarified that the Legislature's failure to expressly provide for a common-law defense in a criminal statute does not prevent a defendant from relying on that defense.[27]

In *People v Dupree*, this Court addressed whether a defendant could properly raise the common-law affirmative defense of self-defense when charged under the felon-in-possession statute, MCL 750.224f.[28] The felon-in-possession statute does not explicitly

---

Nevertheless, the dissent reasons that because MCL 750.81d does not include a "'lawful acts' proviso," the Legislature "clearly" and "in no uncertain terms" abrogated the common law and excluded the lawfulness of a police officer's conduct as an element of resisting an officer. The dissent relies on a footnote in *Reed v Breton*, 475 Mich 531, 539 n 8; 718 NW2d 770 (2006), explaining that the mere absence of language specifically abrogating the common law does not necessarily mean that no abrogation occurred. However, nothing in *Reed* changes the longstanding rule that the Legislature must speak in no uncertain terms when it intends to abrogate the common law, and *Reed* does not support the dissent's position that the mere *absence* of language is somehow the same as the *presence* of "no uncertain terms."

[26] We note that while MCL 750.479 was amended by 2002 PA 270, it has not been repealed and remains an alternative statute under which resisting and obstructing may be charged.

[27] *People v Dupree*, 486 Mich 693, 705; 788 NW2d 399 (2010).

[28] *Dupree*, 486 Mich at 705.

10

indicate that self-defense is an available defense to this charge. Nevertheless, this Court clarified that "[t]he Legislature's failure to provide explicitly for the common law affirmative defense of self-defense does not foreclose defendants from relying on it to justify a violation of MCL 750.224f."[29] Specifically, this Court explained that "[h]istorically, in cases in which the statutory provision did not squarely resolve the issue before this Court, we have applied the common law, presuming that the Legislature enacted statutes mindful of those aspects of common law that have become 'firmly embedded in our jurisprudence . . . .'"[30] This Court went on to explain that "[m]ore recently, the United States Supreme Court recognized the interrelated nature of criminal statutes and the common law, stating that legislative bodies enact criminal statutes 'against a background of Anglo-Saxon common law . . . .'"[31] Finding this rationale instructive, this Court concluded that

> [a]bsent some clear indication that the Legislature abrogated or modified the traditional common law affirmative defense of self-defense for the felon-in-possession charge in MCL 750.224f or elsewhere in the Michigan Penal Code, we presume that the affirmative defense of self-defense remains available to defendants if supported by sufficient evidence.[32]

In the context of resisting or obstructing an officer, there must be some clear indication in MCL 750.81d that the Legislature abrogated the common-law right to resist

---

[29] *Id.*

[30] *Id.*, quoting *Garwols v Bankers Trust Co*, 251 Mich 420, 424; 232 NW 239 (1930).

[31] *Dupree*, 486 Mich at 705, quoting *United States v Bailey*, 444 US 394, 415 n 11; 100 S Ct 624; 62 L Ed 2d 575 (1980).

[32] *Dupree*, 486 Mich at 706.

11

an officer's unlawful conduct if this Court is to so hold.  This Court has recognized that "'[t]he obstruction of or resistance to a public officer in the *performance of his duties* is an offense at common law, and by statute in all jurisdictions.'"[33]  MCL 750.81d expressly defines "obstruct" as a "knowing failure to comply with a *lawful command*."[34]  However, the decision of the Court of Appeals in this case conflicts with the statutory language. The Court held that MCL 750.81d *prohibits* a person from resisting an officer's unlawful conduct, yet the statute *allows* a person to obstruct an officer's unlawful command.  This conflict casts substantial doubt on the argument that the Legislature intended, let alone "clearly intended," to abrogate the common-law right to resist an unlawful arrest by not including the phrase "in their lawful acts" in MCL 750.81d.

Based on the plain language of MCL 750.81d, and without any certain indication otherwise by the Legislature, we cannot simply assume that the Legislature intended to abrogate the common-law right to resist an unlawful arrest with its enactment of MCL 750.81d.  Such an interpretation of the statute would be inconsistent with this Court's rules of statutory construction when abrogation of the common law is at issue.

In this case, the Court of Appeals held that "[t]he fact that defendant refused entry to the officers unless they obtained a search warrant is indicative of defendant's knowledge of their status as police officers and that they were engaged in the performance of their official duties."[35]  There is no question that defendant knew that the

---

[33] *Krum*, 374 Mich at 361 (emphasis added; citation omitted).

[34] MCL 750.81d(7)(a) (emphasis added).

[35] *Moreno*, unpub op at 5.

men at his door were police officers. However, the officers wanted to enter defendant's home without a warrant, and one of the officers physically prevented defendant from closing the door to his home. Accordingly, defendant's refusal to allow the officers into his home is not conclusive of whether defendant had reasonable cause to know that the officers were "engaged in the performance of their official duties." Consistently with the common-law rule, we conclude that the prosecution must establish that the officers' actions were lawful.

## B. THE LEGISLATIVE HISTORY OF MCL 750.81d DOES NOT SUPPORT ABROGATION

The legislative history of MCL 750.81d is also helpful in demonstrating that that the Legislature did not intend to abrogate the right to resist an unlawful act by an officer. However, this history must be reviewed in conjunction with the history of the corresponding statute, MCL 750.479. Before 2002, it was clear that a person had the right to resist unlawful police conduct. The pre-2002 version of MCL 750.479 governed the offense of resisting and obstructing and generally prohibited resisting an officer discharging his or her duties.[36] This Court interpreted the former version of MCL

---

[36] The former version of MCL 750.749 provided:

> Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council of any incorporated village, or township board of any township or who shall assault, beat or wound any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or

13

750.479 as including the Michigan common-law principle that "one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest . . . ."[37] Thus, the former version of MCL 750.479 included the right to resist unlawful police conduct.

In 2002, the Legislature passed House Bill 5442, amending the prior version of MCL 750.479.[38] Simultaneously, the Legislature enacted House Bill 5440 as 2002 PA 266, which added MCL 750.81d. Both bills contained reciprocal language providing that

---

> execute any such process, rule or order, or for having served, or atempted [sic] to serve or execute the same, or who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than 1,000 dollars.

[37] *Krum*, 374 Mich at 361.

[38] MCL 750.479 now provides in pertinent part:

> (1) A person shall not knowingly and willfully do any of the following:
>
> (a) Assault, batter, wound, obstruct, or endanger a medical examiner, township treasurer, judge, magistrate, probation officer, parole officer, prosecutor, city attorney, court employee, court officer, or other officer or duly authorized person serving or attempting to serve or execute any process, rule, or order made or issued by lawful authority or otherwise acting in the performance of his or her duties.
>
> (b) Assault, batter, wound, obstruct, or endanger an officer enforcing an ordinance, law, rule, order, or resolution of the common council of a city board of trustees, the common council or village council of an incorporated village, or a township board of a township.

14

each would not take effect unless both were enacted into law.[39] The amended version of MCL 750.479 no longer prohibits a person from resisting "persons authorized by law to maintain and preserve the peace," but is instead targeted at prohibiting threatening and dangerous conduct toward a list of enumerated persons connected with law enforcement.[40] The statute provides a tiered penalty structure for various degrees of danger posed and harm caused to a person protected by the statute,[41] clarifies that a person can be charged with and convicted of an underlying offense, and provides courts with discretion to impose a sentence for violating this statute that must be served consecutively to any sentence for an offense arising out of the same transaction.[42] Further, the statute defines the term "obstruct" as including "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command."[43]

Meanwhile, MCL 750.81d focuses on prohibiting dangerous and threatening conduct toward a "person" protected by the statute.[44] This includes resisting an officer's

---

[39] The arguments offered for passing these bills were to protect persons in all professions connected to law enforcement instead of only peace officers and to establish a tiered penalty structure based on the seriousness of the injury actually inflicted. The bills were to provide uniformity of punishment and consolidate all provisions relating to attacks on law enforcement personnel, firefighters, and emergency medical personnel into one section of the law. House Legislative Analysis, HB 5440 through 5443 and 5601, August 29, 2002, p 5.

[40] MCL 750.479(1)(b) retains the prohibition in the former version of the statute against threatening and dangerous conduct toward officers enforcing municipal law.

[41] MCL 750.479(2) through (5).

[42] MCL 750.479(6) and (7).

[43] MCL 750.479(8)(a).

[44] MCL 750.81d(7)(b).

actions. The statute expressly enumerates the law enforcement officials and other emergency responders who are protected and requires that an individual have reason to know that his or her conduct is directed toward a person "performing his or her duties."[45] Like MCL 750.479, MCL 750.81d provides a tiered penalty structure for various degrees of danger posed and harm caused to a person protected by the statute,[46] clarifies that a person can be charged with and convicted of an underlying offense, and provides courts with discretion to impose a sentence for violating the statute that must be served consecutively to any sentence for an offense arising out of the same transaction.[47] Further, just like MCL 750.479, MCL 750.81d defines the term "obstruct" as including "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command."[48] As evidenced by the language of these two statutes, it is clear that the Legislature changed some, but not *all*, aspects of the common law governing the offenses of resisting and obstructing a peace officer.[49] The Legislature made these changes using language that clearly set forth the changes it intended to make.

_____

[45] MCL 750.81d(1) through (4).

[46] *Id*.

[47] MCL 750.81d(5) and (6).

[48] MCL 750.81d(7)(a).

[49] MCL 750.479 and MCL 750.81d together now prohibit certain conduct against peace officers *and* additional persons connected to law enforcement, and they include tiered penalty structures for the various degrees of danger posed and harm caused to these persons. In these statutes, the Legislature clarified that a person can be charged with an underlying crime. The Legislature also abrogated the common-law rule of presumed concurrent sentencing by expressly providing for consecutive sentencing for all offenses arising out of the same transaction.

In contrast, the Legislature expressed no intent to do away with the common-law right to resist an unlawful arrest.[50]  The most that could be said in favor of finding an abrogation of that right is the omission of the phrase "in their lawful acts" from MCL 750.81d.  However, similar language regarding lawful acts was included in both MCL 750.81d and the amended version of MCL 750.479.  Both statutes now include language that this Court has used in the past to explain that the common-law offense of obstructing or resisting an officer occurs while the protected person is "performing his or her duties." The term "duty" generally means "something that one is expected or required to do by moral or legal obligation"[51] and legally implies "an obligation one has by law or by contract."[52]  MCL 750.479 and MCL 750.81d both imply that the charged person "knows or has reason to know" that a protected individual is "performing his or her duties" when

---

[50] When legislatures from other states intended to do away with this common-law right, they found clear and unequivocal language to accomplish their task.  For example, a Delaware statute makes it abundantly clear that "[t]he use of force is not justifiable under this section to resist an arrest which the defendant knows or should know is being made by a peace officer, *whether or not the arrest is lawful*."  Del Code Ann, tit 11, § 464(d) (emphasis added).  A Texas statute clearly provides that "[i]t is no defense to prosecution under this section that the arrest or search was unlawful."  Tex Penal Code Ann 38.03(b). An Oregon statute, Or Rev Stat 161.260, which is similar to MCL 750.81d, expressly provides, "A person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful."  Similarly, an analogous Colorado statute expressly provides: "It is no defense to a prosecution under this section that the peace officer was attempting to make an arrest which in fact was unlawful . . . ."  Colo Rev Stat 18-8-103(2).

[51] *Random House Webster's College Dictionary* (2000).

[52] Black's Law Dictionary (6th ed).

engaging in conduct authorized by law or required by legal obligation.[53]  Thus, the

Legislature retained the concept that the offense of resisting and obstructing requires that

an officer's actions are lawful.

This Court has explained that if there is doubt about whether a statute abrogates

established common-law rules, the statute shall be "'given the effect which makes the

least rather than the most change in the common law.'"[54]  Nevertheless, without any

certain indication of the Legislature's intent to abrogate the common-law right to resist an

---

[53] The meaning of this added phrase is not inconsistent with the omitted phrase "in their lawful acts."  This concept was illustrated at oral argument when Justice CAVANAGH questioned the prosecutor as follows:

> *Justice Cavanagh*:  Can I pose this hypothetical to you?  What if you have a situation where you have a male officer performing his duties undertakes a search of a female prisoner and puts his hand inside her pants and commits a CSC [criminal sexual conduct]?  Under your just stated interpretation of [MCL 750.]81d and under *Ventura*'s holding, and assuming she resists—she fights him off, tries to fight him off—she could be charged could she not?
>
> [*Prosecuting Attorney*]:  No.
>
> *Justice Cavanagh*:  Why?
>
> [*Prosecuting Attorney*]:  What—what duty is he performing?
>
> *Justice Cavanagh*:  Doing a search.

This exchange illustrates that there is no relevant distinction between the meaning of an officer "performing his or her duties" and an officer engaging in "lawful acts."  Just as an officer acts outside his or her legal duty to perform a search by committing an assault, the officers in this case acted outside their legal duties by unlawfully entering defendant's home without a warrant.

[54] *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997), quoting *Energetics, Ltd v Whitmill*, 442 Mich 38, 51; 497 NW2d 497 (1993).

18

unlawful arrest, the Court of Appeals in *Ventura* pronounced that it was "adopt[ing] the modern rule that a person may not use force to resist an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal under the circumstances of the occasion."[55]  However, we find nothing in the language or legislative history of this statute to support this conclusion.  Therefore, we simply cannot conclude that the Legislature abrogated the common-law right to resist unlawful invasions of private rights in "no uncertain terms."

Accordingly, we overrule *Ventura* to the extent that it concluded that the common-law right to resist an unlawful arrest was abrogated by MCL 750.81d.

## IV.  CONCLUSION

While the Legislature has the authority to modify the common law, it must do so by speaking in "no uncertain terms."[56]  Neither the language of MCL 750.81d nor the legislative history of this statute indicates with certainty that the Legislature intended to abrogate the common-law right to resist unlawful arrests or other unlawful invasions of private rights.  We cannot presume that the Legislature intended to abrogate this right.  Therefore, we overrule *Ventura* to the extent that it held that the Legislature affirmatively chose to modify the traditional common-law rule that a person may resist an unlawful arrest.[57]

---

[55] *Ventura*, 262 Mich App at 377.

[56] *Hoerstman*, 474 Mich at 74.

[57] *Ventura*, 262 Mich App at 376-377.

Because the Court of Appeals in this case relied on *Ventura* and extended its broader principle to the context of unlawful entry of the home, we reverse the judgment of the Court of Appeals and remand this matter to the trial court. On remand, we instruct the trial court to grant defendant's motion to quash the charges on the basis of its ruling that the officers' conduct was unlawful.

> Diane M. Hathaway
> Michael F. Cavanagh
> Marilyn Kelly
> Mary Beth Kelly
> Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

         Plaintiff-Appellee,

v                                      No. 141837

ANGEL MORENO, JR.,

         Defendant-Appellant.

_____

MARKMAN, J. (*dissenting*).

I respectfully dissent from the majority's decision to reverse the judgment of the Court of Appeals and overrule *People v Ventura*, 262 Mich App 370; 686 NW2d 748 (2004). The only issue here is whether the Legislature abrogated the right to resist police conduct that is later determined to have been unlawful. Before 2002, the Legislature in MCL 750.479 made it unlawful to resist a police officer, but only if that officer was performing what was later determined to constitute a "lawful act." However, in 2002, the Legislature amended MCL 750.479 and also enacted a new statute addressing this subject, MCL 750.81d, neither of which contains the "lawful act" requirement. By doing this, the Legislature clearly excluded consideration of the lawfulness of the police officer's conduct as a relevant element in forcibly resisting an officer as long as the police officer was "performing his or her duties," and it did so "in no uncertain terms." Therefore, I would affirm the judgment of the Court of Appeals, which, in reliance on *Ventura*, held that defendant was properly charged with resisting and obstructing a police

officer under MCL 750.81d after he physically struggled with officers who had entered his home.[1]

## I. LEGISLATIVE ABROGATION

Before 2002, MCL 750.479 provided:

> Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, or who shall resist any officer in the execution of any ordinance, by law, or any rule, order or resolution made, issued, or passed by the common council of any city board of trustees, or common council or village council of any incorporated village, or township board of any township or who shall assault, beat or wound any sheriff, coroner, township treasurer, constable or other officer duly authorized, while serving, or attempting to serve or execute any such process, rule or order, or for having served, or atempted [sic] to serve or execute the same, or who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, *in their lawful acts*, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than 1,000 dollars. [Emphasis added.]

In *People v Krum*, 374 Mich 356, 361; 132 NW2d 69 (1965), this Court held that "one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest" without violating MCL 750.479. See also *People v Clements*, 68 Mich 655, 658; 36 NW 792 (1888) (holding that a debtor whose property was seized by a sheriff executing an invalid writ of attachment was not "compelled to submit to such

---

[1] The trial court ruled that the officers had unlawfully entered defendant's home, and the prosecutor did not appeal that ruling. Therefore, this opinion is written under the assumption that the officers' entry was unlawful.

trespass without reasonable resistance" in order to avoid violating 1882 How Stat 9257, a predecessor of MCL 750.479).

In 2002, the Legislature amended MCL 750.479 and enacted MCL 750.81d. MCL 750.479 now provides, in pertinent part:

> (1) A person shall not knowingly and willfully do any of the following:
>
> (a) Assault, batter, wound, obstruct, or endanger a medical examiner, township treasurer, judge, magistrate, probation officer, parole officer, prosecutor, city attorney, court employee, court officer, or other officer or duly authorized person serving or attempting to serve or execute any process, rule, or order made or issued by lawful authority or otherwise *acting in the performance of his or her duties*.
>
> (b) Assault, batter, wound, obstruct, or endanger an officer enforcing an ordinance, law, rule, order, or resolution of the common council of a city board of trustees, the common council or village council of an incorporated village, or a township board of a township.
>
> (2) Except as provided in subsections (3), (4), and (5), a person who violates this section is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.
>
> (3) A person who violates this section and by that violation causes a bodily injury requiring medical attention or medical care to an individual described in this section is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.
>
> (4) A person who violates this section and by that violation causes serious impairment of a body function of an individual described in this section is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $10,000.00, or both.
>
> (5) A person who violates this section and by that violation causes the death of an individual described in this section is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.

* * *

3

(8) As used in this section:

(a) "*Obstruct*" includes the use or threatened use of physical interference or force or a *knowing failure to comply with a lawful command*. [Emphasis added.]

MCL 750.81d provides:

(1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is *performing his or her duties* is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

(2) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care to that person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.

(3) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a serious impairment of a body function of that person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.

(4) An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing the death of that person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.

* * *

(7) As used in this section:

(a) "*Obstruct*" includes the use or threatened use of physical interference or force or a *knowing failure to comply with a lawful command*.

(b) "Person" means any of the following:

4

(*i*) A police officer of this state or of a political subdivision of this state including, but not limited to, a motor carrier officer or capitol security officer of the department of state police.

(*ii*) A police officer of a junior college, college, or university who is authorized by the governing board of that junior college, college, or university to enforce state law and the rules and ordinances of that junior college, college, or university.

(*iii*) A conservation officer of the department of natural resources or the department of environmental quality.

(*iv*) A conservation officer of the United States department of the interior.

(*v*) A sheriff or deputy sheriff.

(*vi*) A constable.

(*vii*) A peace officer of a duly authorized police agency of the United States, including, but not limited to, an agent of the secret service or department of justice.

(*viii*) A firefighter.

(*ix*) Any emergency medical service personnel described in section 20950 of the public health code, 1978 PA 368, MCL 333.20950.

(*x*) An individual engaged in a search and rescue operation as that term is defined in [MCL 750.50c]. [Emphasis added.]

MCL 750.81d applies to police officers, firefighters, and emergency medical service personnel, and MCL 750.479 applies to other persons involved with law enforcement, such as judges, prosecutors, and parole officers. Both statutes make it unlawful not only to assault or resist these individuals, but also to endanger them while they are performing their duties. Both statutes also have multitiered penalty structures based on the level of injury suffered.

5

The question before us concerns whether the rule announced in *Clements* and reaffirmed in *Krum*, 374 Mich at 361, that "one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest" remains the rule of law in Michigan in light of the 2002 amendment of MCL 750.479 and the enactment of MCL 750.81d. More specifically, the issue concerns whether a person who forcibly resists a police officer who is unlawfully entering that person's home may be found guilty of violating MCL 750.81d. I believe that the answer to the latter question must be in the affirmative.

As mentioned earlier, in 2002 the Legislature enacted significant changes to this state's resisting-and-obstructing laws. Perhaps the most significant change pertained to the elimination of the phrase "in their lawful acts" from MCL 750.479. This language was also notably left out of the newly enacted MCL 750.81d. This is significant because while the former version of MCL 750.479 clearly made it unlawful to resist police officers only if those officers were performing "lawful acts," the absence of this same language in MCL 750.81d equally clearly makes it unlawful to resist police officers regardless of whether those officers were performing "lawful acts."

At the outset, it must be observed that the majority states that the issue here is "whether the Legislature intended to abrogate the common-law right to resist an unlawful arrest with its 2002 enactment of MCL 750.81d," *ante* at 5, when it cites no case of any Michigan court in support of the underlying assumption that there was such a common-law right in Michigan. Instead, each case the majority cites supports only the proposition that the pre-2002 versions of MCL 750.479 made it illegal to resist a police officer only if the officer's actions were "lawful." See *Krum*, 374 Mich at 361 (interpreting 1948 CL

6

750.479), and *Clements*, 68 Mich at 658 (interpreting 1882 How Stat 9257). That is, in Michigan, pursuant to *Krum* and *Clements*, there was a *statutory* right to resist police officers in their unlawful acts. *Ventura*, 262 Mich App at 374 (stating that "under MCL 750.479, the right to resist an unlawful arrest was, in essence, a defense to the charge of resisting arrest, because the legality of the arrest was an element of the charged offense").[2] Therefore, contrary to the majority's contention, "the rules regarding abrogation of the common law," *ante* at 7, are not even clearly relevant here.

However, even assuming that as a legacy of the English common law there was a common-law right to resist unlawful police conduct in Michigan, and therefore that the rules regarding legislative abrogation must be invoked, the Legislature clearly abrogated this common-law right in 2002. "The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed." Const 1963, art 3, § 7. "Whether a statutory scheme preempts, changes, or amends the common law is a question of legislative intent." *Wold Architects & Engineers v Strat*, 474 Mich 223, 233; 713 NW2d

---

[2] I recognize, of course, that there was an English common-law right to resist unlawful arrests. Apparently, this right originated from the belief that an unlawful arrest "created adequate provocation for the victim, thus justifying the victim's resistance and reducing the charge from murder (an unprovoked killing) to manslaughter (a killing upon sufficient provocation)." Hemmens & Levin, *"Not a Law at All": A Call for a Return to the Common Law Right to Resist Unlawful Arrest*, 29 Sw U L R 1, 9 (1999), citing *Hopkin Huggett's Case*, 84 Eng Rep 1082 (KB, 1666). This right was later extended to excuse assaults against police officers. Hemmens & Levin, 29 Sw U L R at 11, citing *Rex v Thompson*, 168 Eng Rep 1193 (KB, 1825). However, the majority cites no authority for the proposition that this aspect of English common law was ever expressly adopted in Michigan.

7

750 (2006). However, "the Legislature 'should speak in no uncertain terms' when it exercises its authority to modify the common law.'" *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 28; 780 NW2d 272 (2010), quoting *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006).

Assuming that there was a common-law right in Michigan to forcibly resist a police officer's unlawful acts, I believe the Legislature "in no uncertain terms" abrogated this right when it amended MCL 750.479 and enacted MCL 750.81d. As discussed, before 2002, MCL 750.479 made it unlawful to resist a police officer only if that officer was performing a "lawful act." However, in 2002, the Legislature removed the "lawful acts" proviso in MCL 750.479 and enacted MCL 750.81d, which similarly does not contain the "lawful acts" proviso. By doing so, the Legislature "in no uncertain terms" excluded the lawfulness of the police officer's conduct as an element of resisting an officer. That is, the Legislature clearly abrogated the right to resist unlawful police conduct. Therefore, in Michigan, as of 2002, it is unlawful to forcibly resist a police officer, regardless of the lawfulness of the police officer's actions. As the Court of Appeals explained in *Ventura*, 262 Mich App at 375-377:

> Examining the language of the [sic] MCL 750.81d, unlike in [the former version of] MCL 750.479, we find no reference to the lawfulness of the arrest or detaining act. The language of MCL 750.81d is abundantly clear and states only that an individual who resists a person the individual knows or has reason to know is performing his duties is guilty of a felony. MCL 750.81d. Because the language of the statute is clear and unambiguous, further construction is neither necessary nor permitted, and we decline to "'expand what the Legislature clearly intended to cover'" and "read in" a lawfulness requirement.

\* \* \*

8

When the Legislature enacts statutes, it has knowledge of existing laws on the same subject, and it is not within our province to disturb our Legislature's obvious affirmative choice to modify the traditional common-law rule that a person may resist an unlawful arrest. [Citations omitted.]

The majority argues that the common-law right to resist unlawful police conduct was not abrogated because "nowhere in MCL 750.81d does the Legislature state that the right to resist unlawful conduct by an officer no longer exists." *Ante* at 9. However, this Court has already held that the Legislature does not have to expressly state that it is "abrogating a common-law right" in order for it to abrogate a common-law right. As this Court explained in *Reed v Breton*, 475 Mich 531, 539 n 8; 718 NW2d 770 (2006):

In *Wold Architects & Engineers v Strat*, 474 Mich 223, 234; 713 NW2d 750 (2006), we stated that nothing in the act at issue there showed an intent to abrogate the common law. We did not extend that analysis to conclude that the absence of language specifically abrogating the common law demonstrated that no abrogation occurred.

Here, the Legislature abrogated the common-law right to resist unlawful police conduct by *removing* this right from MCL 750.479 and by enacting the related statute, MCL 750.81d, without including this right. The Legislature's intent to abrogate the common-law right to resist unlawful police conduct is sufficiently clear without its having to specifically state that this was its intent. A legislative body need not provide a blow-by-blow analysis concerning the effect of its actions on the common law when its actions will admit of only the most obvious interpretation.

Contrary to the majority's position, the Legislature's striking of the lawfulness requirement from the "resisting" portions of the pertinent statutes was hardly inadvertent. This is evidenced by the fact that the lawfulness requirement was partially retained in the obstruction portions of the statutes. Both statutes define "obstruct" as "the use or

9

threatened use of physical interference or force or a knowing failure to comply with a *lawful command.*" MCL 750.479(8)(a); MCL 750.81d(7)(a) (emphasis added). Accordingly, while an individual who physically interferes with or forcibly resists an officer may be guilty of "resisting" or "obstructing," regardless of whether the officer's conduct was lawful, an individual who fails to comply with an officer's command may be guilty of "obstructing" only if the officer's command was "lawful."[3] See *Brooks v Rothe*, 577 F3d 701, 707 (CA 6, 2009) ("[A] straightforward reading of the language of [MCL] 750.81d(7)(a) provides that the law can be violated in two ways: by physically resisting a command, whether lawful or unlawful, *or* by refusing to comply with a lawful command without using force.") (emphasis in the original). By expressly providing that failing to comply with an officer's command can constitute obstruction only if the officer's command was "lawful" and yet expressly removing this same lawfulness requirement

---

[3] The majority holds that "the decision of the Court of Appeals in this case conflicts with the statutory language" because the Court "held that MCL 750.81d *prohibits* a person from resisting an officer's unlawful conduct, yet the statute *allows* a person to obstruct an officer's unlawful command." *Ante* at 12 (emphasis in the original). The decision of the Court of Appeals does not, in my judgment, conflict in any way with the statutory language; rather, the majority simply fails to recognize the distinction between physically interfering with or resisting an officer and simply failing to comply with an officer's command. Pursuant to MCL 750.81d, while an individual may be guilty of the former even if the officer's conduct is unlawful, an individual can be guilty of the latter only if the officer's command was lawful. For example, if a person responds to an officer's unlawful command to hand over his car keys by punching the officer, this person may be guilty of obstructing the officer; however, if the person does nothing other than refuse to hand over his keys, he would not be guilty of obstructing the officer. This distinction makes perfect sense. It is perfectly logical to punish people who physically interfere with an officer, even if the officer's conduct is unlawful, yet not punish those people who do nothing other than fail to comply with an officer's unlawful command.

10

from the physical interference and resistance portions of the statutes, the Legislature "in no uncertain terms" exercised its authority to modify the common law. That is, it modified the common-law rule-- that one could be found guilty of resisting or obstructing an officer only if the officer's conduct was lawful-- to allow one to be found guilty of resisting or obstructing an officer for failing to comply with an officer's lawful command or for physically interfering with or resisting the officer regardless of whether the officer's conduct was lawful. The distinctions drawn are clear, reasonable, and fully within the judgment of the Legislature.

The majority further contends that the Legislature's removal of the language "in their lawful acts" is irrelevant because "this Court has recently clarified that the Legislature's failure to expressly provide for a common-law defense in a criminal statute does not prevent a defendant from relying on that defense." *Ante* at 10, citing *People v Dupree*, 486 Mich 693; 788 NW2d 399 (2010). As discussed earlier, it appears that the right to resist unlawful police conduct was a statutory right rather than a common-law right in Michigan. However, even assuming that it was a common-law right in Michigan, it was a common-law right that the Legislature codified when it enacted 1869 PA 24, which amended a predecessor of MCL 750.479, and rejected when it amended MCL 750.479 and enacted MCL 750.81d in 2002. This historical context makes this case altogether distinguishable from *Dupree* in which this Court held that an individual charged with being a felon in possession of a firearm can raise the common-law affirmative defense of self-defense even though the felon-in-possession statute is silent regarding self-defense, because the Legislature had never expressly included self-defense in the statute and then removed it. Unlike in *Dupree*, in which the Legislature simply

11

remained silent about self-defense in the felon-in-possession statute, the Legislature has not remained silent about the right to resist unlawful police conduct. Instead, from 1869 until 2002, the Legislature clearly provided for such a right, and in 2002, the Legislature equally clearly removed it. By doing so, the Legislature "in no uncertain terms" abrogated the right to resist unlawful police conduct,[4] and *Dupree* is hardly relevant in establishing the contrary.

---

[4] Defendant argues that he should be able to claim "self-defense" because the Self-Defense Act, MCL 780.972(2), provides, in pertinent part:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent *unlawful* use of force by another individual. [Emphasis added.]

First, defendant may very well have been engaged in the commission of a crime when he used force to resist the officers' entry into his house. Marijuana was found inside defendant's house, and defendant's girlfriend admitted that minors were drinking alcohol inside defendant's house. Even more significantly, it is well established that "the more specific provision prevails over the more general . . . ." *Manuel v Gill*, 481 Mich 637, 648-649; 753 NW2d 48 (2008). Clearly the resisting-and-obstructing statute more specifically pertains to the subject of resisting and obstructing a police officer than does the Self-Defense Act, and pursuant to the resisting-and-obstructing statute, an individual can only forcibly resist a police officer if he does not know or have reason to know that the officer is performing his duties. MCL 750.81d; see also *State v Hobson*, 218 Wis 2d 350, 365; 577 NW2d 825 (1998), in which a similar argument was rejected. Moreover, there is no evidence that defendant "'reasonably believe[d] . . . that he [was] in immediate danger of unlawful bodily harm from his adversary . . . .'" *Dupree*, 486 Mich at 707, quoting 2 LaFave, Substantive Criminal Law (2d ed), § 10.4, p 142. At most, defendant could reasonably have believed that he was in immediate danger of an unlawful entry into his home by a police officer, which does not give rise to a right to forcefully resist.

12

Next, the majority argues that the removal of "in their lawful acts" is irrelevant because it was replaced with "similar language," namely, "performing his or her duties." *Ante* at 17-18. The majority fails to recognize the substantial distinction between "in their lawful acts" and "performing his or her duties." It is well established that the lawfulness of an individual's conduct is not necessarily determinative of whether that individual is "performing his or her duties" because an individual can commit an unlawful act while "performing his or her duties." See *People v Corr*, 287 Mich App 499, 504; 788 NW2d 860 (2010), lv den 488 Mich 946; 794 NW2d 324 (2010) ("Under MCL 750.81d(1), it is illegal to assault, batter, resist, or obstruct an officer even if the officer is taking unlawful action, as long as the officer's actions are done in the performance of the officer's official duties."). This has been recognized time and time again in the context of the doctrine of respondeat superior. Pursuant to that doctrine, "[a]n employer is generally liable for the torts its employees commit within the scope of their employment." *Hamed v Wayne Co*, 490 Mich 1, 10-11; 803 NW2d 237 (2011). Indeed, "'[a] municipal corporation may . . . be liable for an *unlawful* and unauthorized act of one of its officers or agents if the act was done in the course of his official *duty* or employment, and within the general scope of his authority.'" *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 624; 363 NW2d 641 (1983), quoting 57 Am Jur 2d, Municipal, School, and State Tort Liability, § 88, pp 99-100 (emphasis added).[5] The fact

---

[5] See also *Anschutz v Liquor Control Comm*, 343 Mich 630, 637; 73 NW2d 533 (1955) ("[T]he instruction to the employee did not relieve defendant from responsibility for the illegal act on the ground that such employee placed himself outside the scope of his employment when he violated it."); *Barnes v Mitchell*, 341 Mich 7, 19-20; 67 NW2d 208 (1954) ("'The application of the rule *respondeat superior* does not depend upon the

that a municipality may be liable for an unlawful act of an officer if the act was done in the course of the officer's official duty or employment necessarily means that an officer can commit an unlawful act while "performing his or her duties." Therefore, contrary to the majority's suggestion, "in their lawful acts" and "performing his or her duties" are not even remotely synonymous.[6]

However, this is not to say that an officer who is "on the clock" is necessarily performing his duties or acting within the scope of his employment. Instead, an officer is performing his duties or acting within the scope of his employment when he is """"engaged in the service of his master, or while about his master's business."""" *Hamed*, 490 Mich at 11 (citations omitted). "Although an act may be contrary to an employer's instructions"-- or unlawful-- it is within the employee's scope of employment "if the employee accomplished the act in furtherance, or the interest, of the employer's

---

obedience of the servant to his master's orders, nor upon the legality of the servant's conduct; where a servant is acting within the scope of his employment, and in so acting does something negligent or wrongful, the employer is liable, even though the acts done may be the very reverse of that which the servant was actually directed to do.'") (citation omitted); *Randall v Chicago & Grand Trunk R Co*, 113 Mich 115, 119; 71 NW 450 (1897) ("'[T]he fact that the injury was occasioned by the negligent or unlawful acts of the appellant's employés would not make the appellant liable, unless it further appeared that the acts complained of occurred within the scope of the servants' employment.'") (citation omitted).

[6] Even the English common-law right to resist unlawful arrests did not apply to all unlawful arrests. Instead, "the cases in which the common law courts held that an illegal arrest created sufficient provocation to excuse resistance, generally involved police officers arresting individuals through truly outrageous conduct and 'arbitrary assertions of authority.'" Hemmens & Levin, 29 Sw U L R at 12, quoting Chevigny, *The Right to Resist an Unlawful Arrest*, 78 Yale L J 1128, 1131 (1969). In particular, individuals did not have a right to resist "good faith" arrests, i.e., arrests made by police officers who had a good-faith belief that the arrest was lawful. Hemmens & Levin, 29 Sw U L R at 12.

14

business." *Id.* On the other hand, "[i]ndependent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment." *Id.* Therefore, contrary to the majority's assertion, the issue here is not whether the officers lawfully entered defendant's house, but rather whether the officers were acting to further their employer's or their own individual interests. In other words, were they going "about [their] master's business" or their own business when they entered defendant's house? *Id.*[7]

---

[7] This interpretation is consistent with how other jurisdictions have interpreted similar statutes. For example, in *United States v Heliczer*, 373 F2d 241, 245 (CA 2, 1967), cert den, 388 US 917; 87 S Ct 2133; 18 L Ed 2d 1359 (1967), the United States Court of Appeals for the Second Circuit rejected the defendant's "claim that if the arrest was unlawful, the agents were not engaged in performing their official duties, and [the defendant] had a right to resist." *Heliczer* explained:

> "Engaged in * * * performance of official duties" is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own. It cannot be said that an agent who has made an arrest loses his official capacity if the arrest is subsequently adjudged to be unlawful. [*Id.*, quoting 18 USC 111.]

See also *United States v Street*, 66 F3d 969, 978 (CA 8, 1995) ("The 'scope of what the agent is employed to do' is not defined by 'whether the officer is abiding by laws and regulations in effect at the time of the incident . . . .'") (citation omitted); *United States v Jennings*, 991 F2d 725, 732 (CA 11, 1993) ("The test is not whether the officer is abiding by laws and regulations in effect at the time of the incident, but whether the officer is on some 'frolic of his own.'") (citations omitted); *Barnes v State*, 946 NE2d 572, 578 (Ind, 2011) (holding that an officer "was engaged in the execution of his official duty" regardless of whether his entry into the defendant's apartment was lawful); *State v Valentine*, 132 Wash 2d 1; 935 P2d 1294 (1997) (holding that an officer "was engaged in performance of his official duties" regardless of whether his arrest of the defendant was lawful); *Commonwealth v Moreira*, 388 Mass 596, 601; 447 NE2d 1224 (1983) ("[A] person may not use force to resist an arrest by one who he knows or has good reason to believe is an authorized police officer, engaged in the performance of his duties, regardless of whether the arrest was unlawful in the circumstances."); *State v Austin*, 381

There is no question that the officers in this case were going about their master's business when they entered defendant's house. They knocked on defendant's door because a vehicle belonging to Shane Adams, who had several outstanding warrants, was parked near defendant's house and a person leaving defendant's house told one of the officers that several minors were consuming alcohol inside defendant's house and that Shane Adams "might be" inside. The officers saw empty bottles of alcohol and several people running and hiding inside the house. The officers were wearing their police uniforms, and they verbally identified themselves as police officers. Fifteen minutes after the officers knocked on the door, defendant's girlfriend, Mandy McCarry, opened the door and admitted that minors were drinking alcohol inside. When an officer asked her if she knew who owned the vehicle parked on the street, she asked if the officers were looking for Shane Adams and then denied that he was there. Both officers smelled intoxicants, and one of the officers also smelled burnt or burning marijuana. When an officer told McCarry that they were going to enter the house to secure it while they obtained a search warrant, defendant came to the door and, using obscene and vulgar language, told the officers that they could not enter. When defendant moved to close the door, an officer placed his shoulder to the door to prevent it from being closed. A struggle ensued between defendant and the officers, and defendant was removed from the

A2d 652, 654 (Me, 1978) (noting that a statute that "makes a person guilty of assaulting an officer if he 'knowingly assaults a law enforcement officer while the officer is engaged in the performance of his official duties' . . . 'discourage[s] people in custody from a violent response to what they see as an illegal arrest'") (emphasis and citations omitted). The majority, on the other hand, does not cite a single case in support of its contrary position.

16

house and arrested. One of the officers suffered a torn hamstring and injured elbow as the result of the struggle, for which he sought medical treatment. The officers entered the house and patted down the occupants for weapons. After a search warrant was obtained, the officers found marijuana inside the house.

Although the trial court ruled that the officers' entry into the house was unlawful because they did not yet have a warrant and there were no exigent circumstances to justify the warrantless entry into the house,[8] this does not mean that the officers were not "performing their duties" when they entered the house. Indeed, the officers were unquestionably acting in furtherance of their employer's interests and not in furtherance of their own personal interests. They were simply trying to do their job by locating a person who had multiple outstanding warrants while protecting minors who they had reason to believe might have been drinking alcohol and smoking marijuana. Given these circumstances, it cannot be reasonably disputed that the officers were performing their duties as law enforcement officers and, more importantly, that defendant knew or had

_____

[8] Again, because the prosecutor did not appeal that ruling, this opinion is premised on the assumption that there were no "exigent circumstances" to justify the warrantless entry into the house, and thus that the entry was unlawful. Nevertheless, it is worth noting that the "exigent circumstances" exception to the warrant requirement does allow the police to enter a home without a warrant to prevent the "imminent destruction of evidence," *In re Forfeiture of $176,598*, 443 Mich 261, 267-268; 505 NW2d 201 (1993), and when asked why the officers "wanted to 'secure' the residence," one officer testified, "[W]e wanted to prevent any destruction of evidence and so we were going to secure it so noone [sic] could flush marijuana or further eat it, or do whatever they could to destroy it," and the other officer testified that their entry "was based on probable cause that there was evidence that could be destroyed inside the residence." Accordingly, even assuming that the officers' entry was unlawful-- and I undertake no effort to resolve that question in this case-- the officers did not believe at the time that it was unlawful, and they certainly believed that they were performing their duties.

17

reason to know that they were performing their duties.[9]  Therefore, defendant had no

right under law to resist or obstruct them.[10]

## II.  CONSTITUTIONALITY

The next issue is whether MCL 750.81d, so interpreted, is unconstitutional, i.e.,

whether there is a constitutional right to resist unlawful police conduct.  Defendant

argues that there is such a right and specifically argues that it derives from the Fourth

Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.  [US Const, Am IV.]

Defendant cites *Payton v New York*, 445 US 573, 590; 100 S Ct 1371; 63 L Ed 2d 639

(1980), for the proposition that "the Fourth Amendment has drawn a firm line at the

---

[9] Indeed, defendant himself has never argued that the officers were not performing their duties in the instant case.

[10] The majority refers to a hypothetical situation posed by Justice CAVANAGH at oral argument in which a male officer, while performing a search, sexually assaults a female prisoner.  The majority contends that this scenario demonstrates why the language "performing his or her duties" and "in their lawful acts" must be interpreted as synonymous.  Otherwise, the majority contends, this female prisoner would not be allowed to resist the officer without risking a resisting-and-obstructing charge.  I respectfully disagree.  The officer in Justice CAVANAGH's hypothetical situation simply cannot be said to have been performing his duties, not simply because his actions were unlawful, but because they were "independent action[s] accomplished solely in furtherance of [his] own criminal interests," i.e., outside the scope of his employment. *Hamed*, 490 Mich at 11.  And because the female prisoner would have obvious reason to know that the officer was not performing his duties by sexually assaulting her, she could certainly resist the officer without risking being charged with resisting and obstructing.

entrance to the house [and] [a]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Although this is certainly true, it says nothing about whether an individual has a right to physically resist a police officer. In other words, while the Fourth Amendment prohibits the police from entering an individual's house without a warrant absent exigent circumstances, the Fourth Amendment says nothing about entitling an individual to physically resist the police when they do enter that individual's house. Defendant also cites *Wright v Georgia*, 373 US 284, 291-292; 83 S Ct 1240; 10 L Ed 2d 349 (1963), for the proposition that "one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution." However, *Wright* says nothing about whether an individual has a right to go *beyond* simply failing to obey an officer's unlawful command and actually physically resist the officer. As noted earlier, the Legislature recognized this distinction and expressly incorporated it into our resisting-and-obstructing statutes. MCL 750.479(8)(a); MCL 750.81d(7)(a). Only the "failure to comply" form of obstruction in these statutes is premised on the officer's command being lawful; the "physical interference" alternative says nothing about the lawfulness of the command. Our resisting-and-obstructing statutes are completely consistent with *Wright*'s prohibition on punishing a person for failing to obey an officer's unconstitutional command. *Wright*, 373 US at 291-292.[11] If

---

[11] This was also recognized in *Bourgeois v Strawn*, 452 F Supp 2d 696, 710 (ED Mich, 2006), which explained:

> That argument, that police can manufacture grounds to arrest a person innocent of wrongdoing simple [sic] by telling him to leave his own home without any lawful authority to do so and then arresting him for violating that directive, is a disturbing proposition. The Court does not

the defendant in the instant case had simply refused to allow the officers into his home, he could not have been charged with resisting and obstructing, but because he physically resisted the officers, he can be so charged.

In summary, defendant has not cited a single case that supports his proposition that a person has some *constitutional* right to physically resist a police officer who is engaging in unlawful conduct. Indeed, all the cases of which I am aware support the opposite proposition. See, for example, *People v Curtis*, 70 Cal 2d 347, 354; 74 Cal Rptr 713; 450 P2d 33 (1969) ("There is no constitutional impediment to the state's policy of removing controversies over the legality of an arrest from the streets to the courtroom."); Miller, *Retail Rebellion and the Second Amendment*, 86 Ind L J 939, 952-953 (2011) ("[N]o Supreme Court decision has ever held that the right to defend against an unlawful arrest is a constitutional as opposed to a mere common law right."). That there is no constitutional right to resist unlawful police conduct is also obviously supported by the fact that the Model Penal Code,[12] the Uniform Arrest Act,[13] and "a majority of states"[14] have abolished the right. *Barnes v State*, 946 NE2d 572, 576 (Ind, 2011).[15]

---

> read the Michigan intermediate appellate court's decision in *Ventura* as sanctioning that argument, and the proposition is of questionable constitutional validity.

That is, *Bourgeois* recognized that *Ventura*, 262 Mich App at 377, which held that "a person may not use force to resist an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal under the circumstances of the occasion," did not hold that a person may not refuse to comply with an unlawful command, and, thus, neither our resisting-and-obstructing statutes nor *Ventura*'s interpretation of them runs afoul of any constitutional protection.

[12] "[T]he Model Penal Code, adopted by the American Law Institute in 1958, denies the right 'to resist an arrest which the actor knows is being made by a peace officer, although

the arrest is unlawful.'" *Heliczer*, 373 F2d at 246 n 3 (citations omitted). "The Model Penal Code eliminated the right on two grounds: '(1) the development of alternate remedies for an aggrieved arrestee, and (2) the use of force by the arrestee was likely to result in greater injury to the person without preventing the arrest.'" *Barnes v State*, 946 NE2d 572, 575 (Ind, 2011), quoting Hemmens & Levin, 29 Sw U L R at 23.

[13] The Uniform Arrest Act was a model act "drafted by a committee comprised of police officers, prosecutors, defense attorneys, judges, attorneys general, and law professors." Hemmens & Levin, 29 Sw U L R at 18. It provided that "'[i]f a person has reasonable ground to believe that he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest'" and "it prevented an arrestee from using the illegality of the arrest as a defense to charges of assault, manslaughter, or murder." *Id.* at 18-19, quoting Warner, *The Uniform Arrest Act*, 28 Va L R 315, 345 (1942).

[14] As of 1999, 39 states had eliminated the common-law right, "twenty-three by statute and sixteen by judicial decision." Hemmens & Levin, 29 Sw U L R at 24. See also 2 LaFave, Substantive Criminal Law (2d ed), p 159 (noting that many modern state codes include a provision "outlawing the use of force against a known police officer, though the arrest is unlawful," and that "even in the absence of such an enactment some courts have abandoned the common law view").

[15] See 4 Torcia, Wharton's Criminal Law (15th ed), p 280:

> In some states, the traditional common-law rule has been changed. A person may not resist an arrest, lawful or unlawful, which he knows or believes is being made by a peace officer. The obvious purpose of this change is to avoid a dangerous confrontation and require the issue of an arrest's lawfulness to be resolved not in the street but in a court.

See also Perkins, Criminal Law (3d ed), p 554:

> [T]he problems involved are so complicated that it is easy for either the officer or the arrestee to be mistaken in regard to the lawfulness of the arrest and it seems wise to require such issues to be decided in court rather than by force and the present trend . . . is to provide that there is no privilege to resist an arrest which the arrestee knows is being made by a peace officer, even if the arrest is unlawful.

See, for example, *Commonwealth v Gomes*, 59 Mass App Ct 332, 342; 795 NE2d 1217 (2003):

### III. CONCLUSION

I respectfully dissent from the majority's decision to reverse the judgment of the Court of Appeals and to overrule *Ventura*. Before 2002, the Legislature in MCL 750.479 made it unlawful to resist a police officer, but only if that officer was performing what was later determined to constitute a "lawful act." However, in 2002, the Legislature amended MCL 750.479 and also enacted a new statute addressing this subject, MCL 750.81d, neither of which contains the "lawful act" requirement. By doing this, the Legislature clearly excluded consideration of the lawfulness of the police officer's conduct as a relevant element in forcibly resisting an officer as long as the police officer was "performing his or her duties," and it did so "in no uncertain terms." Therefore, I would affirm the judgment of the Court of Appeals, which, in reliance on *Ventura*, held that defendant was properly charged with resisting and obstructing a police officer under MCL 750.81d after he physically struggled with officers who had entered his home.

Stephen J. Markman
Robert P. Young, Jr.

---

[T]he lawfulness of police entry into a residence often presents close and peculiarly fact-dependent questions as to which lawyers and even judges may disagree. Such questions, which are only resolved later with the benefit of dispassionate reflection, are particularly ill-suited to the split-second judgments required of police in their interactions with the citizenry. "Such a close question is more properly decided by a detached magistrate rather than by the participants in what may well be a highly volatile imbroglio." [Citations omitted.]